OPINION OF THE COURT
 

 Hancock, Jr., J.
 

 Defendants were arrested on May 7, 1985 and charged with the violation of trespass (Penal Law § 140.05) when they refused to leave the office of a United States Representative after conducting a peaceful demonstration in which they voiced their opposition to the policy of the United States in imposing an embargo of Nicaragua. In a nonjury trial, Rochester City Court rejected the defense of justification under Penal Law § 35.05 (2), which, under certain circumstances, provides that conduct that would otherwise be illegal may be justified as necessary to avoid a greater evil. County Court affirmed and defendants have appealed to this Court by leave. For reasons which follow, we conclude, as a matter of law, that Penal Law § 35.05 (2), under the facts and circumstances presented, does not afford a basis for the defense of justification. Accordingly, there should be an affirmance.
 

 I
 

 On May 7, 1985, the day after President Reagan issued an Executive Order to implement an embargo on Nicaragua, defendants and other representatives of the Nicaragua Invasion Contingency Action organization (NICA) conducted a demonstration outside the Kenneth B. Keating Federal Building in Rochester. The group went to Congressman Eckert’s office to discuss his views on the embargo, but found that he
 
 *619
 
 was in Washington and could not be reached by telephone. After voicing their opposition to the embargo by reading a statement over the telephone to Congressman Eckert’s administrative assistant, they declared that they would occupy his congressional office until they could speak with him personally. Some of the demonstrators began to sing and chant and, according to the People’s testimony, disrupted the work of the office. Upon being assured that their views would be transmitted to Congressman Eckert, part of the group left when asked to do so. Despite several requests that they leave and after repeated warnings that they would be charged with trespass if they did not do so, defendants continued to occupy the office. They were arrested and charged with the violation of trespass.
 

 During the trial all 11 defendants and three other witnesses adduced extensive testimony concerning their knowledge of the situation in Nicaragua, the formation and purposes of NICA and their involvement with that organization, the objective of the demonstration at the Keating Federal Building on May 7, 1985, and the basis for their opposition to the Government’s policies in Nicaragua. In addition, various books, articles, pamphlets, photographs and slides pertaining to the gravity of the situation in Nicaragua were received in evidence. City Court, however, precluded defendants from offering testimony of expert witnesses to substantiate their contentions concerning the imminence and seriousness of the injuries allegedly resulting from the Government’s policies. The court reasoned that Penal Law § 35.05 (2) called for a subjective, state-of-mind standard of proof and that the only relevant question was whether a defendant’s "intent or state of mind was such that it raises itself to the defense of justification”. It, therefore, excluded expert opinions of third parties as irrelevant.
 

 In a written decision, City Court found that the prosecution had disproved the defense of justification beyond a reasonable doubt
 
 [1]
 
 and had established defendants’ guilt of trespass under Penal Law § 140.05. County Court affirmed in a memorandum, concluding, on its review of the record, that there was sufficient evidence to sustain the court’s findings. On appeal, defendants’ primary argument is that City Court erred in its
 
 *620
 
 interpretation of Penal Law § 35.05 (2) as establishing a subjective rather than an objective standard and in its exclusion of defendants’ proffered expert testimony. For reasons to be explained, we agree with defendants that the statutory standard is objective. We conclude, however, that, applying this standard, Penal Law § 35.05 (2) does not provide a defense in the circumstances here.
 

 II
 

 The general notion that conduct which would otherwise be criminal may be justified as necessary to avoid a greater harm, now codified in New York in Penal Law § 35.05 (2), may be traced to cases in the early English common law
 
 (see, e.g., Reniger v Fogossa,
 
 1 Plowden 1, 18, 75 Eng Rep 1, 29 [1552];
 
 Mouse’s Case,
 
 12 Co Rep 63, 77 Eng Rep 1341 [1608]; Note,
 
 Necessity: The Right to Present a Recognized Defense,
 
 21 New Eng L Rev 779, 780-784 [1985-1986]; Bacon, The Elements of the Common Laws of England, at 25-32 [1636]). In the older English cases, it was a defense to a criminal charge that a defendant committed an act to save a life or to put out a fire. And prisoners might escape from a burning jail without violating the law
 
 (see,
 
 Arnolds and Garland,
 
 The Defense of Necessity in Criminal Law: The Right to Choose the Lesser Evil,
 
 65 J Crim L & Criminology 289, 291-292 [1974]). In the United States, early Federal cases also recognized the defense of necessity
 
 (see, e.g., United States v Ashton,
 
 24 Fed Cas No. 14,470 [CCD Mass 1834] [sailors charged with mutiny justified their refusal to obey captain’s orders on ground that ship was not seaworthy]; Arnolds and Garland,
 
 op. cit,
 
 at 292). Where the defense was permitted in the common law, the cases generally required the existence of an "impending danger, present, imminent and not to be averted” (Note,
 
 Necessity as a Defense,
 
 21 Colum L Rev 71, 72-73;
 
 see generally,
 
 1 LaFave and Scott, Substantive Criminal Law § 5.4, at 627-640).
 

 The view that necessity for avoiding a greater evil might afford a justification for prohibited conduct was adopted in 1962 by the American Law Institute in Model Penal Code § 3.02 (reprinted at 10 ULA 477) (Justification Generally: Choice of Evils). Section 3.02 reflects the judgment that a "choice of evils” defense "like the general requirements of culpability, is essential to the rationality and justice of the criminal law, and is appropriately addressed in a penal code” (Model Penal Code and Commentaries, Part I, § 3.02, comment
 
 *621
 
 1, at 9 [1985]). The essential concept of the Model Code provision is that conduct which "the actor believes to be necessary to avoid a harm or evil to himself or to another” is justifiable, provided that "the harm or evil sought to be avoided” is greater than that "sought to be prevented by the law” being broken (§ 3.02 [1] [a]).
 
 [2]
 
 The provision is not, by its terms, limited to cases involving imminent danger. Nevertheless, the examples given in the commentaries to section 3.02 are of emergency situations involving immediate threat of harm reminiscent of the older common-law cases — e.g., destroying property to prevent spread of a fire, entering a vacant cabin as refuge in a mountain blizzard and using provisions, jettisoning cargo or violating an embargo to save a vessel
 
 (see,
 
 Model Penal Code and Commentaries,
 
 op. cit,
 
 at 9-10).
 

 New York’s first recognition of the defense of necessity came in 1965 with the adoption of Penal Law § 35.05 (2) as part of the revised Penal Law (L 1965, ch 1030). Section 35.05, insofar as pertinent, provides that:
 

 "conduct which would otherwise constitute an offense is justifiable and not criminal when * * *
 

 "2. Such conduct is necessary as an emergency measure to avoid an imminent public or private injury which is about to occur by reason of a situation occasioned or developed through no fault of the actor, and which is of such gravity that, according to ordinary standards of intelligence and morality, the desirability and urgency of avoiding such injury clearly outweigh the desirability of avoiding the injury sought to be prevented by the statute defining the offense in issue.”
 

 Although derived from Model Code § 3.02, section 35.05 (2) is more limited than the Model Code provision and contains restrictive language not found in section 3.02 (e.g., in the requirements that conduct to be justified must be "necessary as an
 
 emergency measure
 
 to avoid an
 
 imminent
 
 public or private injury which
 
 is about to occur”
 
 and that "the desirability and
 
 urgency
 
 of avoiding such injury
 
 clearly outweigh
 
 the desirability of avoiding” the prohibited conduct [emphasis
 
 *622
 
 added];
 
 see,
 
 Donnino, Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law art 35, at 90;
 
 People v Brown,
 
 68 AD2d 503, 508). The Staff Notes of the Temporary State Commission on Revision of the Penal Law and Criminal Code indicate that section 35.05 (2) was envisioned as providing a defense of justification "in rare and highly unusual circumstances” (Proposed NY Penal Law § 65.00, McKinney’s Cons Laws of NY, 1964 Spec Pamph, at 317). As illustrative of conduct which would be justifiable under the section, the Staff Notes cite,
 
 inter alla,
 
 the "burning of real property of another in order to prevent a raging forest fire from spreading into a densely populated community” (Donnino,
 
 op. cit.,
 
 at 91).
 

 Section 35.05 (2) differs from the Model Code provision in another significant particular. Unlike the Model Code which contains a standard for justifiability that is partially subjective (i.e., "[c]onduct that the actor
 
 believes to be necessary
 
 to avoid a harm or evil to himself or to another” [§ 3.02 (1)] [emphasis added]), the New York statutory standard is, by its terms, objective
 
 (see,
 
 Note,
 
 Justification: The Impact of the Model Penal Code on Statutory Reform,
 
 75 Colum L Rev 914, 926-927; 1 LaFave and Scott,
 
 op. cit.,
 
 § 5.4, at 635, n 42;
 
 see also, People v Cardone,
 
 68 NY2d 829, 830). There is no reference in section 35.05 (2) to what the actor intends, or believes to be necessary. In this respect, the section is also unlike Penal Law § 35.15 which bases justification for the use of physical force on the actor’s
 
 reasonable belief
 
 that such force is necessary to defend himself or a third person (§ 35.15 [1]) and for the use of deadly force on the actor’s
 
 reasonable belief
 
 that the other person is using or about to use deadly physical force (§ 35.15 [2] [a]).
 

 In
 
 People v Goetz
 
 (68 NY2d 96), we emphasized that the words "reasonably believes” in Penal Law § 35.15 embody in the justification standard for self-defense elements which are subjective (i.e., what the actor believes) as well as objective (i.e., whether a reasonable person could have had these beliefs)
 
 (id.,
 
 at 112-115). From the plain wording of section 35.05 (2) and the omission of any language suggesting that justification was intended to depend on any belief held by the actor, we agree with defendants’ contention that the statute sets forth a standard that is, by its terms, objective only.
 
 [3]
 

 
 *623
 
 III
 

 Section 35.05 (2) specifies that whenever "evidence relating to the defense of justification under this subdivision is offered by the defendant, the court shall rule as a matter of law whether the claimed facts and circumstances would, if established, constitute a defense”. Thus, the court must decide, as a threshold legal question, whether the defense will lie. We turn to whether under the objective standard in section 35.05 (2), the avoidance of the harm resulting from the Government’s actions in Nicaragua, as postulated by the defendants, could be the basis for a justification defense under the statute. Put another way, the question is: does the harm which defendants sought to avoid by conducting a protest in an effort to change governmental policy constitute an "imminent public or private injury” (§ 35.05 [2]) which, as intended by the Legislature, could justify their conduct as a "necessary [preventative] * * * emergency measure”?
 
 (Id.)
 

 To ascertain the type of situation envisioned by the Legislature in enacting section 35.05 (2), we, of course, look first to the statute, giving the words their natural and obvious meaning
 
 (see, Price v Price,
 
 69 NY2d 8, 15). It is apparent that the language of the statute bears both on the nature of the conduct to be justified and the harm to be avoided. The conduct must be "necessary as an emergency measure to avoid an imminent public or private injury which is about to occur” (§ 35.05 [2]). The requirement that the conduct be "necessary as an emergency measure” to avoid the injury contemplates conduct which is not only warranted by the circumstances as an emergency response but is also reasonably calculated to have an actual effect in preventing the harm. It rules out conduct that is tentative or only advisable or preferable or conduct for which there is a reasonable, legal alternative course of action
 
 (see,
 
 1 LaFave and Scott,
 
 op. cit.,
 
 § 5.4 [d] [5], at 638-639;
 
 People v O’Grady,
 
 147 Misc 2d 118, 119 [App Term, 2d Dept];
 
 United States v Dorrell,
 
 758 F2d 427, 431, 433-434 [9th Cir 1985];
 
 Andrews v People,
 
 800 P2d 607, 609-610 [Colo
 
 *624
 
 1990]). And the requirement that the impending injury must be "imminent” and "about to occur” denotes an impending harm which constitutes a present, immediate threat — i.e, a danger that is actual and at hand, not one that is speculative, abstract or remote
 
 (see, People v Larrabee,
 
 134 AD2d 855, 855-856;
 
 People v Brown,
 
 68 AD2d 503, 508-509,
 
 supra; People v O’Grady, supra,
 
 at 119;
 
 see also,
 
 Donnino,
 
 op. cit.,
 
 at 90-91; 1 LaFave and Scott,
 
 op. cit.,
 
 at 638-639).
 

 From the foregoing analysis, we conclude that the harm resulting from governmental actions in Nicaragua, as described by defendants, lacks the immediacy required by the statute. Moreover, the actions of defendants in committing a trespass in Congressman Eckert’s office cannot be viewed as an emergency measure reasonably calculated to avoid the harm or as a necessary choice over alternative, legal courses of action designed to effect a change in the policy of the Administration. We conclude that the claimed facts and circumstances offered by defendants would not, if established, constitute a defense under section 35.05 (2).
 

 The conclusion that the statute was not intended to cover the sort of actions pursued in this case by defendants in protest of a governmental policy, we believe, finds support not only in the plain wording of the statute but in the examples of conduct which the drafters of section 35.05 (2) and of Model Code § 3.02 (2) used to illustrate justifiable conduct
 
 (see, supra,
 
 at 621, 622). The conclusion that a necessity defense does not lie here is also consistent with the common-law cases which typically limit the defense to emergency situations involving an imminent, unavoidable risk
 
 (see, supra,
 
 at 620; Model Penal Code and Commentaries,
 
 op. cit.,
 
 at 10, n 1; Note,
 
 Necessity: The Right to Present a Recognized Defense, op. cit.,
 
 at 780, 784; Arnolds and Garland,
 
 op. cit.,
 
 at 291-296).
 

 We note that courts in other jurisdictions in cases arising out of protest demonstrations have reached similar conclusions, applying the common law or analogous statutes
 
 (see, e.g., Andrews v People,
 
 800 P2d 607, 609-610 [Colo 1990],
 
 supra
 
 [rejecting "choice of evils defense” where defendants blocked road leading to nuclear weapons plant, under statute virtually identical to New York’s, because conduct was not effective to achieve the purpose or necessary in the face of available legal alternatives and the threatened harm was long-term and speculative, not definite and imminent];
 
 State v Dorsey,
 
 118 NH 844, 395 A2d 855 [1978] [no "competing harms” defense to
 
 *625
 
 illegal occupation of nuclear power plant under statute similar to Model Penal Code];
 
 State v Warshow,
 
 138 Vt 22, 410 A2d 1000 [1979] [no defense of necessity under common law to trespass charge at nuclear power plant];
 
 Commonwealth v Capitolo,
 
 508 Pa 372, 498 A2d 806 [1985] [rejecting necessity defense to charge arising out of protest at nuclear power plant under statute similar to Model Penal Code upon ground that harm was not immediate, near at hand and impending];
 
 Gaetano v United States,
 
 406 A2d 1291 [DC App 1979] [no common-law necessity defense to charge arising from protest at clinic performing abortions];
 
 People v Stiso,
 
 93 Ill App 3d 101, 416 NE2d 1209 [1981] [no defense of necessity under statute similar to Model Penal Code for obstructing clinic performing abortions];
 
 People v Garziano,
 
 230 Cal App 3d 241, 281 Cal Rptr 307 [1991] [no common-law defense of necessity for obstructing clinic performing abortions]).
 

 Inasmuch as the claimed facts and circumstances pertaining to the situation in Nicaragua would not, if established, constitute a justification defense, we do not reach defendants’ contention that the court erred in excluding their proffered expert testimony.
 

 The appeal by defendant Hyla Sandgrund should be dismissed upon the ground that the criminal prosecution has abated by reason of defendant’s death
 
 (People v Ellis,
 
 71 NY2d 1012;
 
 People v Mintz,
 
 20 NY2d 753, 770). On the appeal by the remaining defendants, the order of County Court should be affirmed.
 

 Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Titone and Bet.t.a cos a concur.
 

 Appeal by defendant Hyla Sandgrund dismissed, etc.
 

 [1]
 

 . Justification is a defense, not an affirmative defense. If a defendant’s conduct is justified on the ground of necessity or choice of evils under Penal Law § 35.05 (2), it is not unlawful
 
 (see, People v McManus,
 
 67 NY2d 541, 545-546). When the defense is raised, the People must prove beyond a reasonable doubt that defendant’s conduct was not justified.
 

 [2]
 

 . The section 3.02 (1) defense does not apply: (1) if the code or other law defining the offense provides exceptions or defenses dealing with the specific situation involved (§ 3.02 [1] [b]) or (2) if a legislative purpose to exclude the justification plainly appears (§ 3.02 [1] [c]).
 

 [3]
 

 . Although the operative standard is objective, it would seem virtually inevitable that a defendant who acted under circumstances which made the defense applicable would have done so with the subjective intention of
 
 *623
 
 avoiding the greater evil of the imminent injury. We need not address the hypothetical situation where actual necessity existed but the actor did not have the intention of avoiding the greater evil
 
 (see,
 
 1 LaFave and Scott, Substantive Criminal Law § 5.4, at 635). Here, unquestionably, defendants believed that their conduct would in some way avoid the greater evil in Nicaragua. Nor need we address the situation where — under an objective/ reasonable person standard — the action was necessary but necessity-in-fact did not exist
 
 (see, op. cit.,
 
 at 635, n 42).