OPINION OF THE COURT
Sheldon Greenberg, J.
The defendant’s motion for inspection of the Grand Jury minutes is granted to the extent of the court examining same.
In considering the defendant’s further motion for dismissal of the indictment based on the legal insufficiency of the evidence presented to the Grand Jury, this court having read the Grand Jury minutes finds the evidence adduced thereat legally sufficient to establish the finding of each and every count of the indictment (People v Jennings, 69 NY2d 103, 115).
Nevertheless, the indictment must be dismissed because of errors in the charge given to the grand jurors, and the possibility that a quorum was not present when the true bill was voted.
Legally sufficient evidence was adduced before the Grand Jury that the defendant committed intentional and depraved indifference murder by firing a loaded firearm at another person. However, the Grand Jury apparently credited the defendant’s testimony that he acted in self-defense. The Grand Jury declined to return a true bill for murder, but voted a true bill for criminal possession of a weapon in the second (Penal Law § 265.03 [2]) and third (Penal Law § 265.02 [4]) degrees, and reckless endangerment in the first degree (Penal Law § 120.25). The Grand Jury’s vote on reckless endangerment is understandable since the Assistant District Attorney errone *321 ously instructed the Grand Jury that the charge of justification based on self-defense (Penal Law § 35.15 [2] [a]) applies only to the murder counts, not the reckless endangerment count.
The defendant testified in the Grand Jury that he shot a person who was chasing him and firing shots at him. The defendant testified that he armed himself only while being chased by the would-be assailant, after a third party informed him that there was a loaded firearm in a nearby garbage can.
In People v McManus (67 NY2d 541, 549) the Court of Appeals stated, “In sum, in a prosecution for depraved indifference murder, or another crime involving the use of force, a charge on justification is warranted whenever there is evidence to support it * * * and, if any reasonable view of the evidence would permit the fact finder to decide that the conduct of the accused was justified, an instruction on the defense should be given.” The Court of Appeals noted that it had previously rejected a restrictive application of self-defense, and, instead, has permitted the defense to be raised against diverse charges involving the use of force, regardless of the relevant mens rea, including reckless conduct (People v McManus, supra, at 547, citing People v Huntley, 59 NY2d 868, affg 87 AD2d 488). In McManus (supra), the Court of Appeals reiterated its decision in People v Huntley (supra) that self-defense is applicable to a charge of reckless homicide (Penal Law § 125.15 [1]). The Court of Appeals has held that “a defendant is entitled to a charge ‘that his conduct might not have been criminal under the circumstances’, whenever the defendant claims that ‘he engaged in [forceful] conduct in avoidance of [a] perceived attack’ ” (People v McManus, supra, at 547, citing People v Padgett, 60 NY2d 142, 146).
Penal Law § 35.15 “does not operate to excuse a criminal act, nor does it negate a particular element of a crime. Rather, by recognizing the use of force to be privileged under certain circumstances, it renders such conduct entirely lawful” (People v McManus, supra, at 546 [emphasis added], cited by People v Pons, 68 NY2d 264, 267). The grand jurors should have been instructed that if the defendant acted in self-defense, they should find a no true bill for murder and reckless endangerment (see, People v Castro, 131 AD2d 771).
“Justification based on self-defense (Penal Law § 35.15) pertains only to the use of physical force (see, People v McManus, 67 NY2d 541). It does not apply to a crime based on the possession of a weapon, even though an element of the crime is that defendant possessed the weapon with the intent *322 to use it unlawfully against another” (People v Pons, 68 NY2d 264, 265, supra). In People v Almodovar (62 NY2d 126, 130), the Court of Appeals stated that: “In some circumstances, however, a person may possess an unlicensed or proscribed weapon and still not be guilty of a crime because of the innocent nature of the possession. This defense of ‘temporary and lawful’ possession applies because as a matter of policy the conduct is not deemed criminal (see People v La Pella, 272 NY 81; see, also, Penal Law, § 265.20; cf. People v Williams, 50 NY2d 1043). For example, a defendant may not be guilty of unlawful possession if the jury finds that he found the weapon shortly before his possession of it was discovered and he intended to turn it over to the authorities (People v La Pella, supra; People v Furey, 13 AD2d 412), or that he took it from an assailant in the course of a fight (People v Harmon, 7 AD2d 159). The innocent nature of the possession negates both the criminal act of possession and the intent with which the act is undertaken when intent is an element of the crime.”
In People v Pons (68 NY2d 264, 266, supra) the Court of Appeals noted that in Almodovar (supra), “ ‘the only charge defendant was entitled to on the [possession] count of the indictment was temporary innocent possession’ ” (see, e.g., 1 CJI[NY] 9.65, at 537A-537B). In Pons, the trial court instructed the jury on justification based on self-defense (Penal Law § 35.15) as it relates to murder and manslaughter. The jury acquitted the defendant of murder and manslaughter, but found the defendant guilty of criminal possession of a weapon in the second degree (Penal Law § 265.03). The Court of Appeals commented in a footnote that the defendant Pons “did not request, and the record would not support, a charge under Penal Law § 35.05. Nor did defendant claim on the trial that his gun was licensed or otherwise exempt under Penal Law § 265.20” (People v Pons, at 266, n).
This suggests, that in a proper case, justification as provided by Penal Law § 35.05 is a defense to weapon possession crimes even though Penal Law § 35.15 is not.
Penal Law § 35.05 has been dubbed the “choice of evils” theory (see, e.g., People v Maher, 79 NY2d 978, 981) and “the defense of necessity” (see, e.g., People v Craig, 78 NY2d 616, 621). In People v Craig (supra, at 620), the Court of Appeals observed that the “general notion that conduct which would otherwise be criminal may be justified as necessary to avoid a greater harm, now codified in New York in Penal Law § 35.05 (2), may be traced to cases in the early English common law *323 * * * In the older English cases, it was a defense to a criminal charge that a defendant committed an act to save a life or to put out a fire. And prisoners might escape from a burning jail without violating the law * * * In the United States, early Federal cases also recognized the defense of necessity (see, e.g., United States v Ashton, 24 Fed Cas No. 14,470 [CCD Mass 1834] [sailors charged with mutiny justified their refusal to obey captain’s orders on ground that ship was not seaworthy]).” Penal Law § 35.05, insofar as pertinent, provides that: “[Cjonduct which would otherwise constitute an offense is justifiable and not criminal when * * *
“2. Such conduct is necessary as an emergency measure to avoid an imminent public or private injury which is about to occur by reason of a situation occasioned or developed through no fault of the actor, and which is of such gravity that, according to ordinary standards of intelligence and morality, the desirability and urgency of avoiding such injury clearly outweigh the desirability of avoiding the injury sought to be prevented by the statute defining the offense in issue.”
While justification provided by Penal Law § 35.05 is different from the American Law Institute’s Model Penal Code § 3.02 (reprinted at 10 ULA 477) (Justification Generally: Choice of Evils), the examples given in the commentaries to section 3.02 are reminiscent of older common-law cases — e.g., destroying property to prevent spread of fire, entering a vacant cabin as refuge in a mountain blizzard and using provisions, jettisoning cargo or violating an embargo to save a vessel (People v Craig, supra, at 620-621, citing Model Penal Code and Commentaries, Part I, § 3.02, comment 1, at 9-10). Similarly, the drafters of New York’s “choice of evils” statute believed that the defense justified such conduct as the burning of real property of another in order to prevent a raging forest fire from spreading into a densely populated community, and breaking into an unoccupied rural house to make a telephone call vital to a person’s life (Donnino, Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law art 35, at 131, citing Staff Notes of Commn on Revision of Penal Law, Proposed New York Penal Law, McKinney’s Spec Pamph, at 317 [1964]).
In the case at hand, the defendant testified before the Grand Jury that after escaping previous assaults, he was not able to evade the same armed assailant who was chasing and firing shots at him. On cross-examination, the defendant was asked:
“Q. At that time you didn’t start carrying a weapon for protection, did you?
*324 “A. No, ma’am. Guys on the block knew I didn’t have a weapon. Every time they pulled a gun on me, I would run. You understand what I am saying?
“Q. You were lucky on the night of the shooting that there happened to be a gun in the garbage?
“A. I was lucky that somebody told me there was a gun in . the garbage. I was lucky that somebody fired out the window previously.
“Q. You hung out on that corner, Franklin and Lincoln?
“A. Yes, ma’am.
“Q. Was it common to find guns in garbage pails there?
“A. During what was going on and people were getting killed and shot at, it was not a common nice day.
“When people was out there, people do tend to stash guns under the tires. It is common to find guns stashed on the block.
“Q. You were familiar with that, correct?
“A. Not exactly. I knew about it.”
Given these facts, the grand jurors should have been advised that New York’s choice of evils statute (Penal Law § 35.05) is applicable to criminal possession of a weapon.
The People generally enjoy wide discretion in presenting their case to the Grand Jury (People v Rockwell, 97 AD2d 853) and are generally not obligated to search for evidence favorable to the defense or to present all evidence in their possession that is favorable to the accused (People v Isla, 96 AD2d 789) even if such information undeniably would allow the Grand Jury to make a more informed determination (People v Lancaster, 69 NY2d 20). However, the prosecutor’s discretion is not without bounds. Not only does a prosecutor have a duty of fair dealing with the accused and candor with the courts, but also to instruct the Grand Jury on the law, for, by statute, responsibility for instructing the Grand Jury on the law rests solely with the court and the prosecutor (People v Lancaster, supra). As a practical matter, it is the District Attorney, through his assistants in the Grand Jury, who is responsible for the day-to-day instructions on the law on specific matters before the Grand Jury.
The Court of Appeals has held that a prosecutor need not instruct the Grand Jury as to every conceivable defense suggested by the evidence, but ordinarily need instruct only as to those “complete” defenses which the evidence will support (People v Lancaster, supra, at 26, citing People v Valles, 62 *325 NY2d 36, 39). People v Valles (supra) does not require that every complete defense suggested by the evidence be charged to the Grand Jury. The test of “whether a particular defense need be charged depends upon its potential for eliminating a needless or unfounded prosecution” (People v Valles, supra, at 38, cited by People v Lancaster, supra, at 27).
In People v Lancaster (supra, at 27-28), the Court of Appeals stated that: “Thus, the defense of justification * * * not only relieves a defendant of criminal liability in that his conduct is by statute deemed not criminal (see, Penal Law art 35; People v McManus, 67 NY2d 541, 548), but it also demands his immediate release (see, CPL 330.10). Accordingly, where evidence establishes a potential defense of justification, prosecution may be needless and the Grand Jury should be charged on the law regarding that potential defense because its consideration is properly within that body’s province (People v Valles, 62 NY2d 36, supra).”
The murder of the defendant would have been a greater evil than the defendant’s temporary disregard of Penal Law article 265. Given the fact that the Grand Jury was instructed on self-defense and did not return a true bill for homicide, the prosecutor’s omission of Penal Law § 35.05 from the charge impaired the integrity of the Grand Jury and requires dismissal of the counts of the indictment charging criminal possession of a weapon.
A further complication occurred just before the Grand Jury was charged on specific counts and deliberated. Before charging the grand jurors, the Assistant District Attorney asked them - if there was a quorum present and if 12 or more jurors who heard all of the evidence were present. The foreperson responded affirmatively to both questions. Immediately thereafter, the Assistant District Attorney asked two jurors to leave the room because they were seen sleeping during part of the presentation. No further inquiry was made as to whether a quorum was present while the Grand Jury deliberated and returned a true bill. In People v Cade (140 AD2d 99, 103, read on other grounds 74 NY2d 410), the Appellate Division held that “absent evidence that a proper quorum was present and voted at the renewed presentation of the case to the Grand Jury, the indictment is fatally flawed (see, People v Collier, 131 AD2d 864, affd 72 NY2d 298; People v Infante, 124 AD2d 86).”
For these reasons, the indictment is dismissed with leave to re-present the weapon counts to another Grand Jury.