*522 OPINION OF THE COURT
Robert M. Stole, J.
The defendants are charged in a criminal court information with the crimes of criminal trespass in the third degree, in violation of Penal Law § 140.10, and obstructing governmental administration in the second degree, in violation of Penal Law § 195.05. The accusations stem from a confrontation on February 15, 2000 in which the defendants and others tried to prevent the City of New York from using bulldozers to clear Esperanza Garden, a lower east side “community garden” located on City-owned property. The defendants and certain others were arrested after attaching themselves to various fixtures in the garden, which was located at 223-225 East 7th Street, and refusing police orders to leave. It is alleged that defendants, among other things, chained themselves to metal pipes cemented into the ground, and one defendant cemented herself inside a “large hollow plastic and mesh frog.”
In support of their actions the defendants proffer a defense of “justification,” alleging that any harm resulting from their actions was outweighed by the gravity of the injury which they sought to avoid — the destruction of Esperanza Garden. The People disagree, and they have moved pursuant to Penal Law § 35.05 (2) for an order precluding the defendants from presenting any evidence or argument in support of this proffered defense.
These events are part of an acrimonious dispute between the City of New York and community activists over the disposition of certain vacant lots owned by the City and used by community residents.* Some of those lots, including Esperanza Garden, have been cleared and planted with trees, bushes and other greenery. Esperanza Garden itself was protected by an enclosure complete with lock, to which at least one of the defendants, along with a few others, had a key.
The defendants allege that in the spring of 1999 the City announced its intention to sell various community gardens, apparently including Esperanza Garden, at a public auction to be held on May 13, 1999. A number of environmental groups sued *523 to block the auction, and they were joined by the Attorney General of the State of New York. An order enjoining the sale of properties containing these community gardens was issued-by Supreme Court Justice Richard Huttner on May 12, 1999. In early October 1999 the parties to the civil litigation reached a tentative agreement. The City indicated its intention to sell the community gardens originally scheduled for auction to the New York Trust for Public Land (NYTPL) and the New York Restoration Project (NYRP). On October 25, 1999 Justice Huttner signed an order vacating his prior order enjoining the sale of the properties, in order to permit their transfer to NYTPL and NYRP.
On February 9, 2000 the Attorney General’s Office learned that the City of New York was persisting in its efforts to sell community gardens, including at least six of the gardens which were the subjects of the proceedings before Justice Huttner. On February 14 the Attorney General’s Office notified the City of its intention to seek review of these actions by Justice Huttner, and to obtain an order restraining the City from transferring or altering any community garden within the City. The motion was returnable on February 15, 2000, at 2:00 p.m. Insofar as the record discloses, no temporary order (ex parte or otherwise) was entered pending the motion.
At approximately 3:00 a.m. on February 15 the defendants and others learned that the City was clearing the street in front of 223-225 East 7th Street and preparing to bulldoze the surface of Esperanza Garden. In an effort to delay or prevent the City’s actions the defendants entered and attached themselves to the property. Police and EMS workers spent approximately 90 minutes cutting through chains and other barriers and removing the protesters. The defendants were then arrested and the garden was leveled.
While these actions were occurring on the lower east side, the Attorney General’s Office was attempting to expedite its application before Justice Huttner. At their request the matter was advanced from 2:00 p.m. to 11:00 a.m. When the attorneys for the City appeared in Justice Huttner’s courtroom they informed him that Esperanza Garden had been destroyed. Justice Huttner signed the order sought by the Attorney General’s Office, but he excluded Esperanza Garden from the order, apparently because he believed that, insofar as Esperanza Garden was concerned, the motion was effectively moot.
The defendants argue that they should be allowed to prove all of the foregoing and presumably more in support of a *524 defense of justification. Essentially, they seek to prove that their actions were necessary to prevent an imminent public harm which was of such a dimension as to warrant what would otherwise be illegal conduct. The court disagrees.
The defense of justification is codified under New York law in Penal Law article 35. Section 35.05 (2) provides:
“conduct which would otherwise constitute an offense is justifiable and not criminal when * * *
“2. Such conduct is necessary as an emergency measure to avoid an imminent public or private injury which is about to occur by reason of a situation occasioned or developed through no fault of the actor, and which is of such gravity that, according to ordinary standards of intelligence and morality, the desirability and urgency of avoiding such injury clearly outweigh the desirability of avoiding the injury sought to be prevented by the statute defining the offense in issue. The necessity and justifiability of such conduct may not rest upon considerations pertaining only to the morality and advisability of the statute, either in its general application or with respect to its application to a particular class of cases arising thereunder. Whenever evidence relating to the defense of justification under this subdivision is offered by the defendant, the court shall rule as a matter of law whether the claimed facts and circumstances would, if established, constitute a defense.”
Section 35.05 (2) can be traced to cases in early English common law. (See People v Craig, 78 NY2d 616, 620 [1991], and cases cited therein.) In those early cases “it was a defense to a criminal charge that a defendant committed an act to save a life or to put out a fire.” (People v Craig, supra, at 620.) The New York codification was substantially influenced by the view, adopted in 1962 by the American Law Institute in Model Penal Code § 3.02 (reprinted at 10 ULA 477), that the necessity for avoiding a greater evil might afford a justification for prohibited conduct. The comment to that “choice of evils” provision notes: “ ‘This section * * * reflects the judgment that * * * a qualification on criminal liability, like the general requirements of culpability, is essential to the rationality and justice of the criminal law, and is appropriately addressed in a penal code. Under this section, property may be destroyed to prevent the spread of fire * * * Mountain climbers lost in a storm may take refuge in a house or may appropriate provisions * * * A druggist may dispense a drug without the requisite prescription to alleviate grave distress in an emergency. A developed legal system must have better ways of dealing with such *525 problems than to refer only to the letter of particular prohibitions, framed without reference to cases of this kind.’ ” (See People v Alderson, 144 Misc 2d 133, 138-139 [Grim Ct, NY County 1989].)
In People v Craig (supra), the Court of Appeals held that the defense of justification was not applicable to a charge of trespass which followed upon the refusal of defendants to leave the office of a member of Congress as part of a demonstration protesting the policy of the United States with respect to Nicaragua. In holding that Penal Law § 35.05 (2) “was not intended to cover the sort of actions pursued in [that] case by defendants in protest of a government policy” (at 624), the Court carefully considered the history of the statute. It first determined that the standard by which a defendant’s conduct was to be measured was an objective one, not dependent upon the actor’s “belief.” The Court then explained that conduct “necessary as an emergency measure” (Penal Law § 35.05 [2]) contemplates conduct warranted by the circumstances as an emergency response and reasonably calculated to prevent the harm. This excludes from the defense conduct for which there is a reasonable, legal alternative course of action. (See Donnino, Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law art 35, at 130-131.) In addition, the Court determined that the requirement that the impending injury must be “imminent” and “about to occur” (Penal Law § 35.05 [2]) denotes a danger which is actual and at hand. Finally, the Court noted that section 35.05 (2) was envisioned by its drafters as providing a defense of justification “ ‘in rare and highly unusual circumstances’ ” (at 622, citing Staff Notes of Temp St Commn on Revision of Penal Law and Criminal Code).
The facts and circumstances advanced by the defense would not, if established, constitute a justification defense under the Court of Appeals analysis. Although the defendants claim that the impending injury to the garden was imminent, the facts which they allege establish that approximately seven hours passed between their apprehension of the City’s intentions and the onset of the bulldozers. Virtually all of that time was apparently spent in preparing their illegal activities. The facts herein do not support a conclusion that the injuries were “about to occur.” (See People v Brown, 68 AD2d 503, 508-509 [2d Dept 1979].) Defendants offer no explanation as to why they sought no alternative, legal remedies during the time they had available. Their submissions delineate certain legal actions taken by the Attorney General’s Office, but none which they them *526 selves employed. A search for alternative, legal remedies is required under the statute. (See People v Alderson, supra, at 143.) Finally, and dispositively, the defendants have not established that the gravity of the harm which they sought to avoid could justify their illegal activities. The Court of Appeals made clear in Craig (supra) how rarely circumstances could justify such conduct, and pointed to the precedents in English common law and to the examples cited in the commentaries to the Model Penal Code. The injuries sought to be avoided in those examples virtually without exception involved threats to life and/or to the safety of a community. Damage to a garden, no matter how lovely or beloved, is not such an injury. (People v McDaniel, 172 Misc 2d 854, appeal denied 90 NY2d 895 [1997].)
This does not mean that the City’s actions with respect to Esperanza Garden were prudent or even appropriate when the future of the garden itself was the subject of ongoing litigation. If indeed the City essentially leveled the garden in an effort to moot an anticipated judicial determination of its right to do so, such conduct would be troubling. A determination of the appropriateness of the City’s conduct, however, is principally a matter to be decided in the civil litigation before Justice Huttner. It does not appear relevant to the claimed defense of “justification” in this criminal case.
The People’s motion to preclude the defense of justification is granted.

 The facts set forth in the following paragraphs are drawn principally from those supplied by the defendants Shenker and Djavadi in the affirmations of their attorneys, and from an affirmation of Assistant Attorney General Christopher A. Amato, prepared in the course of civil litigation against the City and submitted by the defendants. For purposes of this motion I must view those facts in a light most favorable to the defendants. (People v Maher, 79 NY2d 978 [1992]; People v Ruiz, 96 AD2d 845 [2d Dept 1983].)