OPINION OF THE COURT
Memorandum.
Ordered that the judgment adjudicating defendant a youthful offender is affirmed; and it is further ordered that the appeal from the amended judgment adjudicating defendant a youthful offender is dismissed as abandoned.
*49 Defendant, who was 17 years old, was charged with criminal possession of a weapon in the fourth degree (Penal Law § 265.01 [1]) after the police had recovered a gun from a closet which they believed was in defendant’s bedroom.
At a pretrial Mapp hearing, New York City Police Officer Thomas Fusco testified that, at approximately 2:30 p.m. on May 22, 2012, he was with his partner and a sergeant, when he received a radio transmission that shots had been fired and that a male had been shot at 1305 Loring Avenue in Brooklyn. When Fusco arrived at the location, he observed medical personnel working on defendant, the person who had been shot. Fusco had met defendant during an investigation of a prior unrelated incident, although defendant had not been the target of that investigation. Defendant was taken to Brookdale Hospital.
About 30 minutes after they arrived at the location of the shooting, an unidentified black female civilian told the officers that defendant had been shot during an altercation. According to the civilian, who wanted to remain anonymous, defendant had entered the building at 1305 Loring Avenue with a firearm. At approximately 3:15 p.m., the officers went to apartment 1-C at 1305 Loring Avenue. Officer Fusco knew that defendant lived in that apartment because he had been there while investigating the prior incident. Fusco knocked on the door of the apartment, and defendant’s sister, who was 18 years old, answered the door. Fusco, who displayed his shield, recognized her from the prior investigation. None of the three officers had their guns drawn. They informed defendant’s sister that defendant had been shot, but she was already aware of that. She did not appear to be concerned or upset. Fusco told her that they were investigating whether there was a firearm in the location. No one else was home at the time. Defendant’s sister let the officers into the apartment. She signed a “consent to search” form after she had read the document and the officers had explained it to her. Fusco told her that the officers were there to remove a gun “if there was a possibility of it being there.”
Officer Fusco asked defendant’s sister to call her mother and to tell her mother, in the event she did not yet know, that defendant had been shot, that Fusco was investigating, and that Fusco had met the mother previously. One of the officers spoke to defendant’s mother and told her that they were investigating whether a firearm was at the location. She gave the officers “verbal consent over the phone to search.”
*50 The officers asked defendant’s sister where defendant slept. She led them to a bedroom. Fusco did not remember asking her whether anyone else slept in that bedroom. The room was messy. It contained men’s clothes, jeans, sweat shirts, and T-shirts with graphic prints. Fusco discovered a firearm, a .22 revolver, in the bedroom closet, under some clothing. Fusco also recovered “assorted live rounds” for different firearms and “two magazines of high capacity ammo feeders” for semiautomatic weapons. In addition, he discovered an envelope containing defendant’s name and address, and the address of an inmate in a correctional facility. The envelope was ripped on the side. Fusco did not know exactly where he had recovered the envelope. He did not remember what was inside the envelope.
After the gun, bullets, magazines, and envelope were recovered, defendant’s stepfather arrived at the apartment, and signed a consent to search form. The officers informed defendant’s stepfather of defendant’s condition and the reason why they were at the apartment.
During cross-examination, Fusco testified that his unit had been informed by the Kings County District Attorney’s Office “that there was an investigation in regard to consent to search forms.” Fusco did not recall whether defendant’s sister was told that she could refuse to sign the consent form.
Defendant presented no evidence and called no witnesses at the hearing.
Defendant’s counsel argued that the gun should be suppressed because “the request to search was not supported by founded circumstances of criminality.” The People did not satisfy their heavy burden of proving the voluntariness of the consent to search. There was no evidence of exigency or emergency. Furthermore, defendant’s sister lacked the authority to consent to the search of the bedroom. Counsel argued that the anonymous female civilian who told Officer Fusco that defendant had a gun did not exist and that Fusco’s testimony was not credible.
The hearing court found Officer Fusco’s testimony to be credible. The court determined that the information supplied by the unidentified woman provided at least an objective credible reason for the police to go to defendant’s home. However, even if the testimony “was a creation of the police,” defendant’s sister voluntarily gave the police consent to search the apartment. The court indicated that defendant’s sister, mother, and *51 stepfather, all of whom were adults who were not in custody or under arrest, consented to the search. They were not evasive or uncooperative. The police did not use force or coercion. The court concluded “that the consent was lawfully obtained” from “someone who had full authority to consent and that extended to the room that was the subject of the consent.”
The parties and the Criminal Court agreed to adopt the non-hearsay portions of the testimony of Officer Fusco for purposes of the trial. The court indicated that “the only issue” at trial was “whether or not [defendant] was in possession of a weapon that was allegedly found in his closet.”
Defendant moved to dismiss based on the lack of sufficient evidence that defendant knew he was in possession of a firearm, and that the People did not establish that defendant had physical or constructive possession of the firearm. The Criminal Court denied the motion.
During summation, counsel argued that, other than hearsay, there was no evidence presented that defendant lived in the apartment. While Officer Fusco had been in the subject apartment on a prior occasion, he had never seen defendant there. Defendant was not in the apartment when the firearm was recovered. Thus, the People did not prove beyond a reasonable doubt that defendant constructively possessed the gun. There was no testimony that the clothing in the bedroom was defendant’s. The envelope recovered from the bedroom had nothing inside it. While it contained defendant’s address, there was no apartment number or postmark.
The court found defendant guilty of criminal possession of a weapon in the fourth degree and adjudicated him a youthful offender. On January 3, 2013, the court sentenced defendant to a term of three years’ probation, and imposed a $200 mandatory surcharge. On July 15, 2013, defendant admitted to violating his probation. Upon an amended judgment adjudicating him a youthful offender, the court sentenced defendant to a term of three months of incarceration, which sentence has been served.
On appeal, defendant contends that the weapon should have been suppressed because the People failed to establish at the hearing that defendant’s sister had the authority to consent to the search of the apartment, or that she consented to the search of the bedroom. Defendant also asserts that the police misrepresented that they were at the apartment to investigate defendant’s shooting, and that the police entry into the apartment was unlawful because it was based on an anonymous tip. De *52 fendant further argues that the testimony of Officer Fusco was not credible, as there was no evidence corroborating his testimony, and his unit was under investigation regarding the consent to search forms. In addition, defendant argues that the evidence was legally insufficient to establish that he actually or constructively possessed the gun. In the alternative, defendant argues that the verdict of guilt was against the weight of the evidence.
The People respond, among other things, that defendant’s misrepresentation claim was not raised in the court below and is unpreserved for appellate review. Moreover, even if the police did not have the legal authority to go to the apartment, the hearing court correctly determined that the subsequent search, which was based on written consent, was valid, and was sufficiently attenuated from any illegal police action. Defendant’s sister had actual or apparent authority to provide voluntary consent to the entry into the apartment. Furthermore, the officers did not deceive her. Defendant’s sister signed the consent to search form, and defendant’s mother provided consent by telephone.
As no issue is raised by defendant with respect to the violation of probation or the sentence imposed thereon, the appeal from the amended judgment adjudicating him a youthful offender is dismissed as abandoned.
To the extent defendant claims that the police deceived defendant’s sister, it is unpreserved for appellate review, as defendant did not raise that claim in the Criminal Court (see CPL 470.05 [2]; People v Martin, 50 NY2d 1029, 1031 [1980]).
The police acted lawfully in going to apartment 1-C at 1305 Loring Avenue, based on a face-to-face encounter during which an unidentified female had told them that defendant had been shot earlier during an altercation and that he had entered the building with a weapon, together with Officer Fus-co’s testimony that he was familiar with defendant and his family based on an investigation of a prior, unrelated incident (see People v Emiliano, 81 AD3d 436, 437 [2011]; People v Appice, 1 AD3d 244, 244-245 [2003]; People v Green, 241 AD2d 500, 501 [1997]; People v Sledge, 225 AD2d 711, 712 [1996]). Even if the initial police conduct were unlawful, the fact that defendant’s sister was not the subject of the police action, coupled with the immediacy of her consent to the entry of the officers into the apartment, and her knowledge that defendant had been shot, attenuated the taint of any illegal police action *53 (see Matter of Leroy M., 16 NY3d 243, 246-247 [2011]; People v Borges, 69 NY2d 1031, 1033 [1987]). The Court of Appeals has held that a police officer is duty bound to investigate any credible report of a person with a gun (see People v Salaman, 71 NY2d 869, 870 [1988]).
Notwithstanding that the police did not inform defendant’s sister or mother that they were free to withhold consent (see People v Gonzalez, 39 NY2d 122, 130 [1976]; People v Buggs, 140 AD2d 617, 617-618 [1988]), the written consent to search form signed by defendant’s sister, and the telephonic consent to search by defendant’s mother, satisfied the People’s heavy burden to establish voluntary consent to search the apartment and the bedroom. The police relied in good faith on the capability of defendant’s sister and mother to consent to a search, and the circumstances reasonably indicated that they had the actual or apparent authority to consent to the search (see Illinois v Rodriguez, 497 US 177, 179 [1990]; People v Gonzalez, 88 NY2d 289, 295 [1996]; People v Adams, 53 NY2d 1, 9 [1981]; People v Gonzalez, 39 NY2d at 127-128; People v Singson, 40 AD3d 1015, 1016 [2007]; People v Fontaine, 27 AD3d 1144, 1145 [2006]; People v Daniels, 22 AD3d 678, 679 [2005]). They had not been coerced or threatened by the police. Neither defendant’s sister nor mother acted in a manner suggesting noncooperation (see People v Gonzalez, 39 NY2d at 128-130; People v Carrington, 25 AD3d 440, 441 [2006]; People v Lewis, 23 Misc 3d 49, 51-52 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2009]).
The factual findings and credibility determinations of the hearing court, which had the advantage of hearing and seeing the witness, are to be accorded great weight on appeal, and will not be disturbed unless completely unsupported by the record (see People v Prochilo, 41 NY2d 759, 761 [1977]; People v Marinus, 90 AD3d 677, 678 [2011]; People v Bici, 32 Misc 3d 136[A], 2011 NY Slip Op 51474[U] [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2011]). Under all the facts and circumstances of this case, we find that the hearing court’s factual findings and credibility determinations were correct.
Viewing the evidence in the light most favorable to the prosecution (see People v Contes, 60 NY2d 620, 621 [1983]), we find that defendant’s guilt of criminal possession of a weapon in the fourth degree was supported by legally sufficient evidence. After the officers asked defendant’s sister where defendant slept, she led the officers to a bedroom containing a male’s *54 clothing and an envelope containing defendant’s name and address. The officers recovered the gun from the bedroom closet. This evidence established defendant’s constructive possession of the gun, and that he had dominion or control of the weapon and the area where it was located, even though defendant was not in the apartment when the gun was recovered (see People v Manini, 79 NY2d 561, 573 [1992]; People v Torres, 68 NY2d 677, 678-679 [1986]; People v Dawson, 110 AD3d 1350, 1352 [2013]; People v Skyles, 266 AD2d 321, 322 [1999]; People v Acevedo, 51 Misc 3d 137[A], 2016 NY Slip Op 50573[U] [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2016]; cf. People v Brown, 133 AD3d 772, 773 [2015]).
In conducting an independent review of the weight of the evidence (see People v Danielson, 9 NY3d 342, 348 [2007]), we find that the verdict of guilt was not against the weight of the evidence (see People v Romero, 7 NY3d 633 [2006]).
Accordingly, the judgment adjudicating defendant a youthful offender is affirmed and the appeal from the amended judgment adjudicating defendant a youthful offender is dismissed as abandoned.
Aliotta, J.P., Pesce and Solomon, JJ., concur.