The People of the State of New York, Respondent,
against
James Cromwell, Appellant.




Sussman & Associates (Michael H. Sussman of counsel), for appellant.
Orange County District Attorney (Andrew R. Kass of counsel), for respondent.
Consolidated
 appeal from (1) a judgment of the Justice Court of the Town of Wawayanda, Orange County (Timothy P. McElduff, Jr., J.), rendered June 7, 2017, and (2) an amended sentence of that court rendered June 29, 2017. The judgment convicted defendant, after a nonjury trial, of disorderly conduct, and imposed sentence. The amended sentence vacated the fine that had been previously imposed and resentenced defendant to a term of imprisonment.




ORDERED that so much of the appeal as is from the portion of the judgment of conviction that imposed sentence is dismissed as academic, as that portion of the judgment of conviction was superseded by defendant's resentence on June 29, 2017; and it is further,
ORDERED that the judgment of conviction, insofar as reviewed, is affirmed; and it is further,
ORDERED that the appeal from the amended sentence is dismissed as abandoned.
Defendant was charged with disorderly conduct (Penal Law § 240.20 [5]) in an accusatory instrument which alleged that, on or about December 18, 2015, at about 9:30 a.m., in the Town of Wawayanda, Orange County, he had obstructed vehicles from entering the Competitive Power Ventures Energy Center (CPV) construction site, where a power plant was being constructed, "by chaining himself and two other people and sitting in the middle of the driveway." The action was consolidated for a joint trial with five others, wherein each defendant [*2]was also charged with disorderly conduct for similar acts of civil disobedience at the same construction site at the same time. 
Prior to trial, defendant was ordered to identify the experts he intended to have testify on his behalf at trial and to provide an offer of proof as to his claimed defense of justification by necessity (Penal Law § 35.05 [2]). In letters to the court dated June 1, 2016 and July 22, 2016, respectively, defense counsel identified the expert witnesses and asserted that they would testify about the health and environmental threats that the ultimate operation of the CPV power plant would pose, which rendered defendant's acts of civil disobedience necessary. Counsel stated that they would also testify that the threats posed by the power plant were profound and related not merely to the exacerbation of global warming, but also to more localized effects on public health and safety. Defense counsel further asserted that defendant would testify that it was his opinion, as informed by significant research, that stopping the power plant was of critical and imminent importance to public health and safety and that was what had motivated his act of civil disobedience. Defendant would also testify that, prior to the act of civil disobedience, he had engaged in various legal actions to draw attention to the dangers that the construction of the power plant posed, but that, to date, none of these other actions had effectively curtailed the public health emergency or the environmental impact faced by the local community. 
The People moved to preclude the expert testimony sought to be introduced at trial, contending that defendant's offer of proof was insufficient to satisfy the statutory requirements for presenting the defense of justification by necessity. They argued that the facts and circumstances asserted by defendant fell short of the statutory "imminent public . . . injury" requirement (Penal Law § 35.05 [2]), since construction of the power plant had yet to be completed. They further contended that the method defendant used to prevent the perceived public injury was not directly intended to stop the power plant from being built, but rather to raise awareness about the potential harms of global warming. It was the People's contention that, based upon defendant's offer of proof, there was no immediate danger posed by the construction site and defendant's actions could not be seen as reasonably calculated to avoid a specific danger.
Defendant opposed the motion and made the same legal arguments he now raises on appeal, maintaining that, even though the defense of justification by necessity has been codified in Penal Law § 35.05 (2) and applies an objective standard to the establishment of the defense, some New York courts have relied on common law precedent from other jurisdictions, which apply a more subjective standard (e.g. People v Bordowitz, 155 Misc 2d 128 [Crim Ct, NY County 1991] [while noting that the defense of justification by necessity has typically been rejected by New York courts where protesters demonstrated against existing enacted policies, the Criminal Court, citing to case law from other jurisdictions, found the defense to be applicable in a case where the defendants, who were each charged with criminally possessing a hypodermic instrument, had contended that they were engaged in a needle exchange program justified by the exigencies created by the AIDS epidemic]; People v Gray, 150 Misc 2d 852 [Crim Ct, NY County 1991] [while noting that most New York courts have declined to apply the defense of justification by necessity in cases involving defendants who have engaged in acts of civil disobedience and admittedly interpreting some of the elements of this defense in a manner which departs from prior decisions in this area, the Criminal Court, citing to case law from other jurisdictions, found the defense to be applicable in a case where the defendants, who were each [*3]charged with disorderly conduct, had participated in a demonstration, during evening hours, at the entrance to one of the roadways of the Queensboro Bridge in opposition to the opening to vehicular traffic of the one lane that had been reserved for bicycles and pedestrians]). Under the subjective standard, a defendant must show, among other things, that he or she reasonably believed that a criminal action was necessary to avoid a harm more serious than that sought to be prevented by the statute defining the charged offense. Applying that standard, defendant argued that his interference with the access road to the construction site, the purpose of which was to slow down, and ultimately stop, the construction of the power plant, was a much lesser evil than the dangers posed by its ultimate operation, which would inevitably exacerbate climate change and lead to public health issues. 
Defendant further asserted that he had acted against a threat of imminent and grave public injury, contending that the term "imminent" does not refer only to immediacy, but also to harms that are certain to occur, even where the timing cannot be precisely predicted, as is the case with many environmental threats. Defendant contended that, at trial, his expert witnesses would establish this element through their testimony that the burning of fossil fuels, which indisputably will occur at the CPV power plant once it is operational, will release carbon dioxide into the atmosphere, which is the primary cause of global warming and which constitutes a serious harm. Moreover, defendant claimed that he reasonably believed that his conduct was necessary since, in obstructing traffic during the construction of this facility, he had acted with a well-founded belief that his actions would lessen climate change by slowing down construction of the power plant, raise awareness of the plant's construction, galvanize public opinion, compel governmental action to address global warming, and prevent ongoing violations of the government's duty to protect vital natural resources. Finally, defendant contended that all legal alternatives had been exhausted prior to the act of civil disobedience involved herein, including petitions which had been ignored and attempts at litigation which had been stymied.
In an order dated October 20, 2016, the Justice Court found that defendant should be allowed "to put forth a complete proffer" for his defense at trial and, consequently, it reserved decision on the People's motion until the close of the evidence, at which time it would first determine whether defendant had presented sufficient evidence to support his defense of justification by necessity as a matter of law, and then render its findings and verdict. On April 20 and 21, 2017, a nonjury trial was conducted, at which the construction manager for the CPV construction site and three of the New York State troopers who had responded to complaints regarding the acts of civil disobedience committed by each of the six defendants, which consisted of blocking the driveway entrance to the CPV construction site for approximately 38 minutes and which resulted in a traffic jam in both directions on Route 6 in the Town of Wawayanda, testified on behalf of the prosecution, and the six defendants, as well as three expert witnesses on climate change, testified on behalf of the defense.
Following the trial, in a written decision dated May 20, 2017, the Justice Court found that, although global warming is a threat to the environment and is "a more serious harm than a relatively brief disruption of traffic at the entrance of a construction site," defendant was not entitled to the defense of justification by necessity, as a matter of law, because his act of civil disobedience was not reasonably calculated to actually prevent the harm presented by the construction of the power plant, and he failed to show that he had no reasonable alternatives to [*4]breaking the law. Moreover, the harm he had sought to prevent lacked the immediacy required by the statute since, at the time of the act of civil disobedience, the CPV power plant was not operational and was years away from completion. While the court noted that there was no doubt that defendant had acted under the belief that his action was necessary and justified, it concluded that the exercise of a person's own moral judgment does not render that person immune from criminal liability, particularly where the harm sought to be prevented is remote and not imminent. As defendant had readily admitted that, on December 18, 2015, he had intentionally caused public inconvenience and annoyance by obstructing vehicular traffic at the CPV construction site, which facts the Justice Court had, in any event, determined to be proven by the People beyond a reasonable doubt, the court found defendant guilty of disorderly conduct. On June 7, 2017, defendant was sentenced to pay a fine in the amount of $250. On June 29, 2017, defendant was resentenced to a seven-day term of imprisonment since he had refused to pay the fine. By decision and order on motion dated March 5, 2018, this court, on its own motion, ordered defendant's appeals from the judgment of conviction and the amended sentence consolidated. 
So much of the appeal as is from the portion of the judgment of conviction that imposed sentence must be dismissed as academic, as that portion of the judgment of conviction was superseded by defendant's resentence on June 29, 2017. Additionally, as no issue has been raised by defendant with respect to his resentence, the appeal from the amended sentence is dismissed as abandoned (see People v Ramlall, 59 Misc 3d 134[A], 2018 NY Slip Op 50491[U] [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2018]; People v Shakeem B., 55 Misc 3d 47, 52 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2017]).
Pursuant to Penal Law § 240.20 (5), "[a] person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof: . . . He obstructs vehicular or pedestrian traffic." Before determining whether the prosecution proved defendant's guilt of disorderly conduct beyond a reasonable doubt, the Justice Court had to determine whether, as a matter of law, "the claimed facts and circumstances would, if established, constitute [the] defense" of justification by necessity (Penal Law § 35.05 [2]). This statutory defense permits, "in rare and highly unusual circumstances," conduct which would otherwise constitute a criminal offense to be considered to have been justified as necessary to avoid a greater harm (People v Craig, 78 NY2d 616, 622 [1991]). Penal Law § 35.05 (2) provides as follows:
"Unless otherwise limited by the ensuing provisions of this article defining justifiable use of physical force, conduct which would otherwise constitute an offense is justifiable and not criminal when: . . . Such conduct is necessary as an emergency measure to avoid an imminent public or private injury which is about to occur by reason of a situation occasioned or developed through no fault of the actor, and which is of such gravity that, according to ordinary standards of intelligence and morality, the desirability and urgency of avoiding such injury clearly outweigh the desirability of avoiding the injury sought to be prevented by the statute defining the offense in issue. The necessity and justifiability of such conduct may not rest upon considerations pertaining only to the morality and advisability of the statute, either in its general application or with respect to its application to a particular class of cases arising thereunder. Whenever evidence relating to the defense of justification under this subdivision is offered by the defendant, the court [*5]shall rule as a matter of law whether the claimed facts and circumstances would, if established, constitute a defense."
While defendant asks this court to apply a subjective standard in deciding whether his act of civil disobedience constituted the defense of justification by necessity, i.e., whether he reasonably believed that criminal action was necessary to avoid a harm more serious than that sought to be prevented by the disorderly conduct statute, the standard to be applied pursuant to Penal Law § 35.05 (2) is an objective one, based upon how a reasonable person would have acted "according to ordinary standards of intelligence and morality" (Penal Law § 35.05 [2]; see also Craig, 78 NY2d at 622; People v Cardone, 68 NY2d 829 [1986]; People v Goetz, 68 NY2d 96,107 [1986]; People v Baker, 127 AD2d 601 [1987]). Furthermore, the requirement that the conduct be "necessary as an emergency measure" (Penal Law § 35.05 [2]) to avoid an injury contemplates conduct which is not only warranted by the circumstances as an emergency response but is also reasonably calculated to have an actual effect in preventing the harm (see Craig, 78 NY2d at 623). This requirement "rules out conduct that is tentative or only advisable or preferable or conduct for which there is a reasonable, legal alternative course of action" (Craig, 78 NY2d at 623; see People v O'Grady, 147 Misc 2d 118, 119 [App Term, 2d Dept, 2d & 11th Jud Dists 1990]). Moreover, the exercise of moral judgment does not render the actor immune from criminal liability (see Craig, 78 NY2d at 622; cf. Gray, 150 Misc 2d 852). 
Looking first to the statute, and giving the words their natural and obvious meaning (see Price v Price, 69 NY2d 8, 15 [1986]), it is apparent that the statute bears both on the nature of the conduct to be justified and the harm to be avoided (see Craig, 78 NY2d at 623). Here, the claimed public injury which defendant was seeking to avoid through his act of civil disobedience was the threat of global warming, and its resulting impact on public health, which would be exacerbated by the future operation of the CPV power plant. Although the trial court seemingly determined that the threat of global warming was of such gravity that the desirability and urgency of avoiding this threat outweighed the injury sought to be prevented by the disorderly conduct statute, based on the above analysis, this court need not pass on this issue, since, after hearing all of the testimony and examining the documentary evidence submitted, the trial court properly determined that, in any event, defendant failed to meet the remaining requirements necessary to establish a justification by necessity defense under Penal Law § 35.05 (2). The record reveals that, as of the date of the offense, the construction of the power plant was in its early stages and it was not to be operational for at least another two years. Thus, we agree that defendant's conduct, planned in advance with the stated intention of drawing attention to the issue of global warming, cannot be considered to have been reasonably calculated to actually prevent any harm presented merely by the construction of the power plant. 
Furthermore, the requirement that the impending injury must be "imminent" and "about to occur" implies that the impending harm must constitute a present, immediate threat, i.e., a danger that is actual and at hand, not one that is speculative, abstract or remote (see Craig, 78 NY2d at 623; People v Larrabee, 134 AD2d 855 [1987]; People v Brown, 68 AD2d 503 [1979]). Under the facts presented herein, we agree with the Justice Court that the public injury which defendant sought to prevent lacked the immediacy required by Penal Law § 35.05 (2). Although defendant contends that the term "imminent" does not only refer to immediacy, but may also refer to a harm that is certain to occur, such as global warming, such a definition is not supported by case law [*6](see e.g. Craig, 78 NY2d 616; Larrabee, 134 AD2d 855; Brown, 68 AD2d 503; People v McDaniel, 154 Misc 2d 89 [App Term, 2d Dept, 9th & 10th Jud Dists 1992]; O'Grady, 147 Misc 2d 118; cf. Bordowitz, 155 Misc 2d 128; Gray, 150 Misc 2d 852). Consequently, defendant's act of civil disobedience on December 18, 2015 was not "necessary as an emergency measure" to prevent a purported public injury (Penal Law § 35.05 [2]).
Having found, as a matter of law, that "the claimed facts and circumstances" do not support a defense of justification by necessity (Penal Law § 35.05 [2]), and since defendant readily admitted, and the People proved beyond a reasonable doubt, that, on December 18, 2015, defendant had intentionally caused public inconvenience and annoyance by obstructing vehicular traffic at the power plant's entrance, or at the very least had recklessly created a risk thereof, the Justice Court properly found defendant guilty of disorderly conduct (see Penal Law § 240.20 [5]; People v Carty, 55 Misc 3d 11 [App Term, 1st Dept 2016]).
Accordingly, the judgment of conviction, insofar as reviewed, is affirmed, and the appeal from the amended sentence is dismissed.
ADAMS, P.J., RUDERMAN and EMERSON, JJ., concur.
ENTER:
Paul Kenny
Chief Clerk
Decision Date: June 13, 2019