[944 NE2d 1123, 919 NYS2d 484]

In the Matter of LEROY M., a Person Alleged to be a Juvenile Delinquent, Respondent. PRESENTMENT AGENCY, Appellant.

Argued January 12, 2011; decided February 17, 2011

## POINTS OF COUNSEL

*Michael A. Cardozo, Corporation Counsel*, New York City (*Norman Corenthal* and *Kristin M. Helmers* of counsel), for appellant. The investigating officers did not violate respondent's right to privacy. A valid consent to enter the living area of the home was given by respondent's adult sister. (*Payton v New York*, 445 US 573; *People v Jones*, 2 NY3d 235; *United States v Titemore*, 437 F3d 251; *United States v Daoust*, 728 F Supp 41, 916 F2d 757; *United States v Hammett*, 236 F3d 1054; *United States v Jones*, 239 F3d 716, 534 US 861; *Estate of Smith v Marasco*, 430 F3d 140; *United States v Weston*, 443 F3d 661; *United States v Taylor*, 458 F3d 1201; *Hardesty v Hamburg Twp.*, 461 F3d 646.)

*Legal Aid Society*, New York City (*Judith Harris, Steven Banks, Tamara A. Steckler* and *Anna Boksenbaum* of counsel), for respondent. The Appellate Division correctly ruled that police officers unlawfully entered respondent's home through the front door without a warrant, exigent circumstances, or consent, and any subsequent consent to the police presence did not cure the taint of the initial illegal entry. (*Welsh v Wisconsin*, 466 US 740; *Payton v New York*, 445 US 573; *Minnesota v Olson*, 495 US 91; *Kyllo v United States*, 533 US 27; *People v Knapp*, 52

NY2d 689; *People v Hodge*, 44 NY2d 553; *People v Jones*, 2 NY3d 235; *People v Adam*, 50 AD3d 1153, 10 NY3d 931; *People v Prince*, 51 AD3d 1052, 10 NY3d 938; *People v Rivera*, 301 AD2d 787.)

## OPINION OF THE COURT

PIGOTT, J.

In January 2008, officials at a school in the Bronx discovered that a laptop computer, valued at almost $1,500, was missing. Fortunately, the computer was equipped with tracking software designed to facilitate its recovery. Using that software, the police were able to trace the computer to an address in the Bronx.

Police officers went to the address, a single-family dwelling, in the middle of the afternoon. Once there, they entered the vestibule of the house without ringing the doorbell or otherwise announcing their presence.

Inside the vestibule, one of the officers knocked on an inner door separating the vestibule from the rest of the home. Respondent's sister, who had heard the officers enter the vestibule, welcomed the officers inside, saying "Thank God you're all here." When asked whether respondent was at home, she answered affirmatively, explaining that her brother had been "acting up" and cursing at her mother, and that she "was going to call [the police] anyway, if [her brother] kept it up."

The sister then directed the officers up the stairs, to a bedroom where they encountered a young man, not the respondent, with a laptop. When asked whether it was his laptop, the young man answered that it was not. At this point, respondent entered the room and, according to one of the officers, said, "That's my laptop. My friend stole it." Respondent, who was 15 years old at the time, was arrested and charged with committing an act that, if committed by an adult, would constitute the crimes of fourth-degree and fifth-degree criminal possession of stolen property.

Respondent moved to suppress all evidence obtained by the police at his residence on the ground that they had entered without a warrant, permission to enter, or exigent circumstances. The Presentment Agency maintained that respondent's sister had consented to the entry.

Following a suppression hearing, Family Court denied respondent's motion, concluding that the Presentment Agency had met its burden of proving that the police had consent to

enter the premises. In particular, Family Court found that the sister's consent had not been coerced or otherwise invalidated. After a fact-finding hearing, Family Court found that respondent had committed an act that, if committed by an adult, would constitute fifth-degree criminal possession of stolen property, adjudicated him a juvenile delinquent, and placed him with the Office of Children and Family Services for 12 months.

The Appellate Division reversed Family Court's order of disposition. It held that the officers' "intrusion over the threshold of the home was unlawful" (65 AD3d 500, 501 [2009]), and that the Presentment Agency had not met its burden of showing that the sister's consent was both voluntary and "sufficiently distinguishable" from the entry to be purged of any illegality (*id.* at 501-502). The court did not pass on the question whether the sister's consent was voluntary, instead resting its decision on a lack of attenuation of the illegal entry. We granted leave to appeal (13 NY3d 717 [2010]) and now reverse.

For purposes of this appeal, the Presentment Agency concedes that the entry into the vestibule was illegal, and respondent concedes that his sister's consent was voluntary. The Presentment Agency argues attenuation, asserting that respondent's sister's consent was "sufficiently distinguishable" from the concededly illegal entry so as to be purged of the taint of the illegality (*Brown v Illinois*, 422 US 590, 599 [1975]).

In deciding whether voluntary consent attenuated the taint of illegal police action, a court must give consideration to a variety of factors, including

> "the temporal proximity of the consent to the [illegal police action], the presence or absence of intervening circumstances, whether the police purpose underlying the illegality was to obtain the consent or the fruits of the search, whether the consent was volunteered or requested, whether the defendant was aware he could decline to consent, and particularly, the purpose and flagrancy of the official misconduct" (*People v Borges*, 69 NY2d 1031, 1033 [1987]; *see Brown*, 422 US at 603-604).

Such factors enable the court to decide "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint" (*Brown*, 422 US at 599).

Here, under *Borges*, the sister's consent attenuated the taint of the initial unlawful entry into the vestibule as a matter of law.

This is so because of, among other things, the sister's unsolicited welcoming of the officers into her home. Upon seeing the officers, the sister exclaimed, "Thank God you're all here"—not the response of someone intimidated into allowing the police into her home. Indeed, the sister testified that she would have summoned the police anyway, had her brother continued to act disrespectfully to their mother. The testimony of both the officers and the sister established that her consent was volunteered and not given upon request.

Further, the fact that the consent came close on the heels of the initial illegality—the factor heavily relied upon by the Appellate Division—is not dispositive of attenuation here, particularly where the person giving the consent is not the subject of the police action. In reaching its conclusion, the Appellate Division considered only the temporal relationship between the illegality and the consent, and ignored the fact that the sister's consent was volunteered, rather than requested, and that she was not the subject of the police investigation. The mere fact that, in other situations, the passage of time has supported a finding of attenuation does not mean that the absence of that factor precludes attenuation. Indeed, the immediacy— the spontaneity—of the sister's consent shows that it was truly volunteered and not, in any way, coerced.

There was no evidence that the illegal entry was undertaken for the purpose of obtaining the consent or seizing the fruits of the search. Moreover, the alleged police misconduct here—walking through an unlocked front door into a vestibule, before knocking on an interior door—is not so flagrantly intrusive on personal privacy that its taint cannot be dissipated.

In sum, the hearing testimony established, as a matter of law, that "the evidence to which . . . objection [was] made [was not] come at by exploitation of th[e initial] illegality" (*Brown*, 422 US at 599). Rather, the computer was recovered "by means sufficiently distinguishable to be purged of the primary taint" (*id.*).

Accordingly, the order of the Appellate Division should be reversed, without costs, and the order of Family Court, Bronx County, reinstated.

CIPARICK, J. (dissenting). Attenuation is generally a mixed question of law and fact in juvenile delinquency adjudications,

as in criminal cases (*see Matter of Daniel H.*, 15 NY3d 883, 884 [2010]). However, the majority holds that the consent to search in this case was so obviously untainted by the improper police entry into the home as to be "attenuated . . . as a matter of law" (*see* majority op at 247). I disagree and respectfully dissent.

As the majority observes, in determining whether consent to search is attenuated from the illegal police entry, "consideration must be given to a variety of factors" (*People v Borges*, 69 NY2d 1031, 1033 [1987]; majority op at 246). In its analysis, the majority heavily emphasizes a single factor, voluntariness, which may militate towards a finding of attenuation here. As we took pains to emphasize in *Borges*, however, "voluntariness of the consent is an important factor in the court's determination of attenuation, [but] it is not dispositive" (69 NY2d at 1033). Giving due consideration to all of the *Borges* factors, I believe the Appellate Division correctly applied our attenuation standard. Its determination that the sister's consent "was not acquired by means sufficiently distinguishable from the unlawful entry to be purged of the illegality" has support in the record (*Matter of Leroy M.*, 65 AD3d 500, 502 [1st Dept 2009]).

Contrary to the majority's assertion that the "immediacy" and "spontaneity" of the sister's consent to search "shows that it was truly volunteered" (majority op at 247), the close temporal proximity of the consent to the illegality weighs heavily against a finding of attenuation (*cf. People v Bradford*, 15 NY3d 329, 334 [2010] [noting that the 2½ hours that transpired between the illegal arrest and inculpatory statement supported a finding of attenuation]). The majority inexplicably assumes that the sister's frame of mind was unaffected by the sudden presence of several police officers in her living room. In my view, the temporal proximity undermines any finding that her statements were distinguishable from the entry, and certainly is not further evidence of their voluntariness. Needless to say, given the quick pace of events, there were no intervening circumstances destroying the link between the illegal entry and the sister's consent.

Further, the Presentment Agency, which has the burden of demonstrating attenuation (*see Borges*, 69 NY2d at 1033), proffered no evidence that the sister was aware she could decline consent to search and exclude the police officers from her home. Had the officers knocked and requested entry, the sister or another resident might have considered whether letting them in was in the family's best interest. Instead, the officers' presence inside may well have suggested that they had entered legally.

Finally, as the Appellate Division emphasized, the police misconduct here was flagrant. Numerous officers, some in uniform, illegally entered what was obviously a private home without any semblance of a warrant or exigent circumstances. Neither of the officers who testified at the hearing could explain how this happened and the failure of their recollection in this context is disturbing.

Since there is record support for the Appellate Division's finding that the sister's consent was not attenuated from the unlawful entry, I would affirm the Appellate Division's order granting suppression of the illegally obtained evidence.

Judges GRAFFEO, READ and SMITH concur with Judge PIGOTT; Judge CIPARICK dissents and votes to affirm in a separate opinion in which Chief Judge LIPPMAN and Judge JONES concur.

Order reversed, etc.