People v Sweat (2019 NY Slip Op 02240)





People v Sweat


2019 NY Slip Op 02240


Decided on March 22, 2019


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on March 22, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department



396 KA 16-01335

[*1]THE PEOPLE OF THE STATE OF NEW YORK, APPELLANT,
v
MICHAEL SWEAT, DEFENDANT-RESPONDENT. 






JOHN J. FLYNN, DISTRICT ATTORNEY, BUFFALO (DAVID A. HERATY OF COUNSEL), FOR APPELLANT.
MICHAEL J. STACHOWSKI, P.C., BUFFALO (MICHAEL J. STACHOWSKI OF COUNSEL), FOR DEFENDANT-RESPONDENT.


 Appeal from an order of the Supreme Court, Erie County (Penny M. Wolfgang, J.), dated May 16, 2016. The appeal was held by this Court by order entered March 16, 2018, decision was reserved and the matter was remitted to Supreme Court, Erie County, for further proceedings (159 AD3d 1423). The proceedings were held and completed. 
It is hereby ORDERED that the order so appealed from is unanimously affirmed and the indictment is dismissed.
Memorandum: In this appeal regarding the legality of the warrantless search of a home wherein police officers recovered a gun, we previously held the case, reserved decision, and remitted the matter to Supreme Court to determine whether one of the lessors of the home consented to the search (People v Sweat, 159 AD3d 1423 [4th Dept 2018]). Upon remittal, the court (Buscaglia, A.J.) held a hearing after which it determined that any alleged consent to search did not attenuate the illegal police entry into the home. We agree.
An officer testified at the hearing that, after midnight on the day in question, he was driving his patrol vehicle down a street in Buffalo when he saw defendant and at least one other man standing on a porch. Defendant was staring at the vehicle and then ran into the home. The officer stopped the vehicle and walked onto the porch in time to encounter defendant exiting through the doorway. At that time, the officer recognized defendant as a man whom he had encountered on a daily basis and whom he knew to have had prior gun-related arrests. The officer asked defendant what he was doing. Defendant, who appeared nervous, did not immediately respond. The officer heard a baby cry, and he then entered the home. Asked by defense counsel why he entered the home, the officer testified, "An individual who's known to carry guns entered that house running into that house actually, coming out acting nervous, there's a baby crying in the house, who is taking care of the baby?"
The officer further testified that, once inside the home, he observed a baby crying on a couch and a woman emerging from the kitchen with a bottle. The officer told her that "an individual ran inside the house" and may have brought an object inside that could hurt her children. Although the officer knew defendant's name and knew that defendant was the individual who ran into the home, he did not mention defendant's name to the woman. The officer testified that he did not "intentionally" withhold defendant's name from the woman. He acknowledged, however, that the term "individual" could refer to a stranger. The officer testified that the woman orally consented to a search of the home, and a gun was found in the front closet. Thereafter, a written permission-to-search form was presented to the woman for her signature, and she signed it.
The woman testified that, on the evening in question, she was sleeping and had been [*2]awakened when her baby starting crying. She went to the kitchen to get a bottle and saw police lights. When she came back from the kitchen, police officers were already searching the living room. One of the men on the porch at the time of the search was her fiancé, the baby's father. Her fiancé was talking to his brother, defendant, a man with whom the woman was familiar. She further testified that, after the gun was recovered, an officer threatened to call Child Protective Services if she refused to sign the permission-to-search form. In its decision, the court found that the officer, by withholding defendant's name from the woman, intentionally misled her into giving consent to search.
In their supplemental brief, the People correctly concede that the officer entered the home illegally. An illegal entry by the police requires the suppression of the fruits of an ensuing search notwithstanding a voluntary consent, unless the consent attenuates the taint of the illegal entry (see Matter of Leroy M., 16 NY3d 243, 246 [2011], cert denied 565 US 842 [2011]). In determining whether the illegal entry is so attenuated, a court is required to consider a variety of factors, including: (1) the temporal proximity of the consent to the illegal entry; (2) whether there were intervening circumstances; (3) whether the purpose underlying the illegal entry was to obtain the consent or the fruits of the search; (4) whether the consent was volunteered or requested; (5) whether the person who gave consent was aware that he or she could refuse consent; and, most importantly, (6) the purpose and flagrancy of the misconduct (see id.; People v Borges, 69 NY2d 1031, 1033 [1987]).
Although the temporal proximity of the consent does not compel suppression by itself (see Leroy M., 16 NY3d at 247), here, that factor and all of the other factors favor suppression (cf. id.). The purpose of the illegal entry was to recover a gun that the officer presumed was hidden inside. Any consent obtained thereafter was not volunteered. It was requested, and the woman was not advised that she could refuse consent. Although the People rely in part on intervening circumstances, i.e., the conversation during which the officer informed the woman that an unidentified "individual" had come into the home and may have placed therein an object that could hurt her children, the court found the officer's statements to be intentionally misleading and made in order to deceive the woman into giving her consent. Thus, we conclude that the conversation does not constitute an intervening circumstance favoring attenuation, but rather weighs in favor of suppression. Most importantly, the officer engaged in flagrant misconduct. Without having witnessed any illegality, the officer entered a private residence without permission, after midnight, while a woman in that residence was trying to feed her newborn child, and coerced her into consenting to a search of her home.
In sum, the court properly granted suppression because the gun was " come at by exploitation' " of illegal police action (id., quoting Brown v Illinois, 422 US 590, 599 [1975]).
Entered: March 22, 2019
Mark W. Bennett
Clerk of the Court