People v Shaw (2024 NY Slip Op 03936)

People v Shaw

2024 NY Slip Op 03936

Decided on July 26, 2024

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on July 26, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: LINDLEY, J.P., MONTOUR, OGDEN, DELCONTE, AND HANNAH, JJ.

315 KA 20-00239

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
SAMUEL SHAW, ALSO KNOWN AS SAV, DEFENDANT-APPELLANT. 

JULIE CIANCA, PUBLIC DEFENDER, ROCHESTER (CLEA WEISS OF COUNSEL), FOR DEFENDANT-APPELLANT. 
SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (MARTIN P. MCCARTHY, II, OF COUNSEL), FOR RESPONDENT. 

 Appeal from a judgment of the Monroe County Court (Vincent M. Dinolfo, J.), rendered August 16, 2019. The judgment convicted defendant upon a jury verdict of murder in the first degree (two counts), murder in the second degree (two counts), attempted murder in the second degree, assault in the first degree and criminal possession of a weapon in the second degree (three counts). 
It is hereby ORDERED that the judgment so appealed from is modified on the law by reversing those parts convicting defendant of murder in the second degree under counts 3 and 4 of the indictment and dismissing those counts and by directing that the sentences imposed on counts 7 and 8 run concurrently with the sentences imposed on counts 1, 2, 5, and 6, and as modified the judgment is affirmed.
Memorandum: Defendant was convicted following a jury trial of two counts of murder in the first degree (Penal Law § 125.27 [1] [a] [viii]; [b]), two counts of murder in the second degree (§ 125.25 [1]), one count each of attempted murder in the second degree (§§ 110.00, 125.25 [1]) and assault in the first degree (§ 120.10 [1]), and three counts of criminal possession of a weapon (CPW) in the second degree (§ 265.03 [1] [b]; [3]). The conviction stems from an incident during which defendant fired 13 shots from a 9mm handgun in a parking lot. Five of the bullets struck a sedan, killing the two occupants. Three shots were fired into an SUV that was parked next to the sedan; the sole occupant of the SUV was struck and paralyzed as a result of her injuries.
As defendant contends and the People correctly concede, counts 3 and 4 of the indictment, charging him with murder in the second degree, must be dismissed as lesser inclusory offenses of counts 1 and 2 of the indictment, charging him with murder in the first degree (see People v Beard, 189 AD3d 2097, 2099 [4th Dept 2020], lv denied 36 NY3d 1095 [2021]; People v Clayton, 175 AD3d 963, 967 [4th Dept 2019]; see generally CPL 300.40 [3] [b]). We therefore modify the judgment accordingly.
As defendant further contends and the People correctly concede, County Court erred in directing that the sentences imposed for CPW in the second degree under counts 7 and 8 of the indictment run consecutively to the sentences imposed for murder in the first degree, attempted murder in the second degree, and assault in the first degree under counts 1, 2, 5, and 6 of the indictment inasmuch as there was no evidence presented that defendant possessed the gun independently of his intent to use it in the shooting (see People v Alligood, 192 AD3d 1508, 1510 [4th Dept 2021], lv denied 37 NY3d 970 [2021]; People v Boyd, 192 AD3d 1659, 1661 [4th Dept 2021]; People v Tripp, 177 AD3d 1409, 1410-1411 [4th Dept 2019], lv denied 34 NY3d 1133 [2020]; see generally People v Brown, 21 NY3d 739, 750-752 [2013]; People v Wright, 19 NY3d 359, 365 [2012]). We therefore further modify the judgment by directing that the sentences imposed on counts 7 and 8 of the indictment shall run concurrently with the sentences [*2]imposed on counts 1, 2, 5, and 6.
Relying on New York State Rifle & Pistol Assn., Inc. v Bruen (597 US 1 [2022]), defendant contends that his conviction for CPW in the second degree under counts 8 and 9 of the indictment (Penal Law § 265.03 [3]) is unconstitutional. Defendant failed to preserve that contention for our review (see People v Cabrera, 41 NY3d 35, 39 [2023]; People v Nixon, 222 AD3d 1384, 1385 [4th Dept 2023], lv denied 41 NY3d 943 [2024]; People v Jacque-Crews, 213 AD3d 1335, 1335-1336 [4th Dept 2023], lv denied 39 NY3d 1111 [2023]), and we decline to exercise our power to review that contention as a matter of discretion in the interest of justice (see CPL 470.15 [6] [a]; People v Ocasio, 222 AD3d 1364, 1365 [4th Dept 2023]; People v Clinton, 222 AD3d 1427, 1428 [4th Dept 2023]; see generally People v Baumann & Sons Buses, Inc., 6 NY3d 404, 408 [2006], rearg denied 7 NY3d 742 [2006]).
Defendant next contends that, as a result of unconstitutional law enforcement conduct, evidence obtained on the date of his arrest—specifically, his statements and a gun—should have been suppressed as fruit of the poisonous tree. In particular, defendant contends that a law enforcement SWAT team violated his constitutional rights when it broke down the fence surrounding the apartment building where defendant had been an overnight guest of a tenant, directed him to exit the residence, and coerced the tenant into consenting to a search of the apartment, during which officers found the gun used in the shooting hidden in a toilet tank. Defendant also contends that his constitutional rights were violated because law enforcement officers intentionally avoided obtaining an arrest warrant in order to skirt New York's indelible right to counsel rules (see NY Const, art I, § 6; see generally People v Doll, 21 NY3d 665, 671-672 [2013], rearg denied 22 NY3d 1053 [2014], cert denied 572 US 1022 [2014]; People v Bing, 76 NY2d 331, 338-339 [1990], rearg denied 76 NY2d 890 [1990]).
As a preliminary matter, we conclude that, inasmuch as defendant's statement "was not admitted into evidence . . .[,] defendant's contention that the statement was the fruit of [an] unlawful [search or] arrest is purely academic" (People v Wilson, 131 AD2d 526, 526 [2d Dept 1987], lv denied 70 NY2d 719 [1987], reconsideration denied 70 NY2d 939 [1987]). We therefore do not address any issues related to the statement.
We reject defendant's contention that his right to counsel was violated when the officers did not first obtain an arrest warrant inasmuch as "there [i]s nothing illegal about the police going to [a] defendant's apartment and requesting that he [or she] voluntarily come out" (People v Garvin, 30 NY3d 174, 180 [2017], cert denied — US &mdash, 139 S Ct 57 [2018] [internal quotation marks omitted]).
As defendant correctly concedes, he failed to preserve for our review his contention that the law enforcement SWAT team's incursion into the curtilage of the apartment building constituted a warrantless entry into a protected space (see People v Hayes, 185 AD3d 1419, 1420 [4th Dept 2020], lv denied 35 NY3d 1113 [2020]; People v Guerrero, 151 AD3d 1875, 1875-1876 [4th Dept 2017], lv denied 30 NY3d 949 [2017]), and we decline to exercise our power to review the merits of that contention as a matter of discretion in the interest of justice (see CPL 470.15 [6] [a]). We reject defendant's related contention that he was denied effective assistance of counsel based on defense counsel's failure to raise that issue inasmuch as defendant failed to demonstrate that his "underlying contention 'would be meritorious upon appellate review' " (People v Bloom, 149 AD3d 1462, 1463 [4th Dept 2017], lv denied 30 NY3d 947 [2017]). A fenced-in yard is part of the curtilage of a home, and warrantless entry into that area is, subject to certain exceptions, a violation of the Fourth Amendment (see People v Morris, 126 AD3d 813, 814 [2d Dept 2015], lv denied 25 NY3d 1168 [2015]; see also United States v Dunn, 480 US 294, 300 [1987]). New York has recognized that a person who has standing to challenge the search of an apartment also has standing to challenge a warrantless entry onto the apartment's curtilage (see People v Hill, 153 AD3d 413, 416 [1st Dept 2017], affd 33 NY3d 1076 [2019]), but federal courts have recognized that "when considering what counts as curtilage, courts have distinguished single-unit and multi-unit buildings and that [i]n a modern urban multifamily apartment house, the area within the curtilage is necessarily more limited than in the case of a rural dwelling subject to one owner's control" (United States v Wills, 634 F Supp 3d 14, 19 [D Conn 2022] [internal quotation marks omitted]; see United States v Arboleda, 633 F2d 985, 992 [2d Cir 1980], cert denied 450 US 917 [1981]). In the case of an apartment house, "a tenant's 'dwelling' cannot reasonably be said to extend beyond his own apartment and perhaps any [*3]separate areas subject to his [or her] exclusive control" (Commonwealth v Thomas, 358 Mass 771, 775, 267 NE2d 489, 491 [1971]; see Arboleda, 633 F2d at 992). Moreover, as an overnight guest, defendant's privacy interest "could not reasonably extend beyond the interior area where he spent the night" (People v Perretti, 278 AD2d 597, 599 [3d Dept 2000], lv denied 96 NY2d 762 [2001]). It is questionable whether defendant would have had standing to challenge the entry into the curtilage. The evidence does not establish if the fenced-in area was particular to the tenant's rental unit or the entire lot containing multiple buildings. Viewing the evidence, the law, and the circumstances of this case in totality and as of the time of representation, we conclude that defense counsel provided defendant with meaningful representation (see generally People v Baldi, 54 NY2d 137, 147 [1981]). Moreover, defense counsel successfully moved to reopen the hearings to raise additional contentions that might warrant suppression (cf. People v Rose, 129 AD3d 1631, 1632 [4th Dept 2015], lv denied 27 NY3d 1005 [2016]).
Defendant further contends that he was improperly arrested in violation of Payton v New York (445 US 573 [1980]). As an overnight guest of the apartment, defendant had standing to raise the Payton challenge (see Minnesota v Olson, 495 US 91, 96-97 [1990]; see also People v Carey, 162 AD3d 1476, 1477 [4th Dept 2018], lv denied 32 NY3d 936 [2018]; but see People v Ortiz, 83 NY2d 840, 842-843 [1994]). An arrest outside of a residence can, in certain situations, constitute a Payton violation (see Garvin, 30 NY3d at 209 [Rivera, J., dissenting]; see also Fisher v City of San Jose, 558 F3d 1069, 1074-1075 [9th Cir 2009]; United States v Saari, 272 F3d 804, 807-808 [6th Cir 2001]) and, under the circumstances of this case, we conclude that there was a Payton violation. Here, the number of officers, their attire in tactical SWAT gear, and their manner of entry constitute "coercive circumstances suggesting that defendant was submitting to authority" by leaving the apartment (People v Benton, 13 AD3d 97, 97 [1st Dept 2004], lv denied 4 NY3d 761 [2005]; cf. People v Minley, 68 NY2d 952, 953-954 [1986]; see generally Kaupp v Texas, 538 US 626, 631 [2003]). We thus conclude that defendant's exit from the residence was " 'a mere submission to a claim of lawful authority' " (Kaupp, 538 US at 631) rather than a voluntary exit from the premises.
Nevertheless, suppression of the gun is not required. The remedy for a Payton violation is "suppression of any evidence obtained from defendant following that violation 'unless the taint resulting from the violation has been attenuated' " (People v Box, 145 AD3d 1510, 1515 [4th Dept 2016], lv denied 29 NY3d 1076 [2017], quoting People v Harris, 77 NY2d 434, 437 [1991]), and a tenant's "valid consent [can] attenuate[ ] any initial illegality" in the constructive entry (People v Espinal, 161 AD3d 556, 558 [1st Dept 2018], lv denied 32 NY3d 1064 [2018]; see People v Priest, 227 AD2d 574, 574-575 [2d Dept 1996], lv denied 88 NY2d 992 [1996]).
Contrary to defendant's contention, we conclude that the tenant's consent was voluntarily given. The factors we review in order to determine whether a person's consent to search is voluntary include "the temporal proximity of the consent to the arrest, the presence or absence of intervening circumstances, whether the police purpose underlying the illegality was to obtain the consent or the fruits of the search, whether the consent was volunteered or requested, whether the [person] was aware [they] could decline to consent, and particularly, the purpose and flagrancy of the official misconduct" (People v Borges, 69 NY2d 1031, 1033 [1987]).
Although the tenant's consent was given close in time to defendant's arrest, the tenant was not the subject of that arrest and, in any event, temporal proximity "is not dispositive of attenuation" (Matter of Leroy M., 16 NY3d 243, 247 [2011], cert denied 565 US 842 [2011]). The officers took time to inform the tenant about the situation, and the evidence at the suppression hearing established that they were expressing a belief that a gun might be in the residence and did not "intentionally misle[a]d her into giving consent to search" (People v Sweat, 170 AD3d 1659, 1660 [4th Dept 2019]). Moreover, at the hearing, the tenant testified for the prosecution that she voluntarily consented to the search out of a desire to have a gun removed from her residence, where a minor child resided. The tenant never claimed, in or out of court, that her consent to search was anything but voluntary, and we reject defendant's contention that the tenant's testimony at the hearing is unworthy of belief. We thus conclude that the court properly refused to suppress the gun recovered from the residence.
Defendant contends that the evidence is legally insufficient to establish attempted murder in the second degree and assault in the first degree and that the verdict with respect to those counts is against the weight of the evidence. We review both contentions based on the jury [*4]charge as given without objection or exception (see People v Prindle, 16 NY3d 768, 770 [2011]; People v Danielson, 9 NY3d 342, 349 [2007]). Viewing the evidence in the light most favorable to the People, as we must when reviewing the legal sufficiency of the evidence (see People v Contes, 60 NY2d 620, 621 [1983]), we conclude, contrary to defendant's contention, that the evidence with respect to those counts is legally sufficient to establish defendant's intent to cause death (see Penal Law §§ 110.00, 125.25 [1]) and resultant serious physical injury (see § 120.10 [1]; see generally People v Bleakley, 69 NY2d 490, 495 [1987]). It is well settled that such intent " 'may be inferred from defendant's conduct as well as the circumstances surrounding the crime' " (People v Badger, 90 AD3d 1531, 1532 [4th Dept 2011], lv denied 18 NY3d 991 [2012]) and, here, defendant fired multiple shots from close range at the SUV in which the victim was a passenger. Furthermore, viewing the evidence in light of the elements of those crimes as charged to the jury (see Danielson, 9 NY3d at 349), we conclude that the verdict with respect to those counts is not against the weight of the evidence (see generally Bleakley, 69 NY2d at 495).
Contrary to defendant's final contention, the sentence, as modified, is not unduly harsh or severe.
All concur except Ogden, J., who dissents and votes to modify in accordance with the following memorandum: I respectfully dissent. I conclude that the tenant's consent to search the apartment was not voluntary, and even assuming, arguendo, that her consent was voluntary, I conclude that it was not sufficiently attenuated from the violation pursuant to Payton v New York (445 US 573 [1980]) to purge the taint of the illegality.
Initially, my colleagues and I agree that defendant had standing to raise his Payton challenge (see Minnesota v Olson, 495 US 91, 96-97 [1990]; but see People v Ortiz, 83 NY2d 840, 842-843 [1994]), and we further agree that a Payton violation occurred (cf. People v Benton, 13 AD3d 97, 97-98 [1st Dept 2004], lv denied 4 NY3d 761 [2005]; see generally Kaupp v Texas, 538 US 626, 631 [2003]).
In my view, however, the tenant's consent was not voluntary. "Official coercion, even if deviously subtle, nullifies apparent consent" (People v Gonzalez, 39 NY2d 122, 124 [1976]). "Whether consent has been voluntarily given or is only a yielding to overbearing official pressure must be determined from the circumstances" (id. at 128). The People bear the heavy burden of establishing that the consent was voluntary (see id.).
The record before us makes clear that the tenant was not free to leave. Immediately before the tenant gave her consent, officers—with guns drawn—ordered her to lie on the ground. She was then grabbed, handcuffed, and placed in the back of a police vehicle. While the tenant sat in the back of the police vehicle, a lieutenant stated, "You don't want to be arrested," and when she responded, he proceeded to tell her to "just chill out." She was allowed to leave the police vehicle only after she consented to the search. Although the tenant later testified that she gave consent to search, the record concerning the events at the time of the consent "lacks support for the conclusion . . . that [she] voluntarily consented" to the search of her home (People v Freeman, 29 NY3d 926, 928 [2017]).
Even if I could agree with my colleagues that the People met their heavy burden of establishing the voluntariness of the tenant's consent, I would conclude that the consent was not sufficiently attenuated from the Payton violation. Contrary to the position taken by my colleagues, voluntariness is not dispositive on the issue of attenuation (see People v Borges, 69 NY2d 1031, 1033-1034 [1987]).
Here, the temporal proximity of the violation and the consent does not support a finding that the consent was sufficiently attenuated (cf. People v Suarez, 137 AD3d 676, 677 [1st Dept 2016], lv denied 27 NY3d 1139 [2016]; People v Santos, 3 AD3d 317, 317 [1st Dept 2004], lv denied 2 NY3d 746 [2004]), and there are no circumstances to support the conclusion that the tenant's consent resulted from "an intervening independent act of a free will" (Brown v Illinois, 422 US 590, 598 [1975] [internal quotation marks omitted]; see e.g. Santos, 3 AD3d at 317). Rather, the consent was requested by officers after, as noted above, they placed the tenant on the ground while they had their guns drawn, then grabbed her, handcuffed her, and placed her in the back of a police vehicle. The People also failed to establish that the tenant was given the right to refuse.
Finally, the underlying purpose for the police conduct, although legal, is particularly flagrant and offends notions of justice. It is undisputed that the reason the police did not seek an arrest warrant in advance was because they did not want defendant's right to counsel to attach. In other words, the police allowed defendant—a person they believed at the time to be armed and dangerous—to remain in the community for the purpose of circumventing his right to counsel. Ironically, the People on appeal insist that defendant should not be given any opportunity to ever live again in the community and must, instead, spend the rest of his life in prison without the possibility of parole.
Consequently, I conclude that County Court erred in refusing to suppress the gun. That error, however, was harmless with respect to the conviction for murder in the first degree, attempted murder in the second degree, and assault in the first degree under counts 1, 2, 5, and 6 of the indictment, all of which stem from the shooting. For those counts, the jury had, among other evidence linking defendant to the shooting, a positive identification of defendant by the victim and another eyewitness (see People v Cotton, 184 AD3d 1145, 1146 [4th Dept 2020], lv denied 35 NY3d 1112 [2020]). With respect to the conviction for criminal possession of a weapon in the second degree under count 9 of the indictment, which stems from defendant's possession of the gun on the date of his arrest, there was no other evidence that defendant possessed a loaded and operable handgun on that date. Consequently, I would further modify the judgment by dismissing that count.
Entered: July 26, 2024
Ann Dillon Flynn
Clerk of the Court