People v Shaw
2026 NY Slip Op 04114
June 26, 2026
Appellate Division, Fourth Department
Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.
This decision is uncorrected and subject to revision before publication in the Official Reports.

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
SAMUEL SHAW, ALSO KNOWN AS SAV, DEFENDANT-APPELLANT.

Supreme Court of the State of New York, Appellate Division, Fourth Judicial Department
Decided on June 26, 2026
315/24 KA 20-00239
Present: Lindley, J.P., Montour, Ogden, Delconte, And Hannah, JJ.

JULIE CIANCA, PUBLIC DEFENDER, ROCHESTER (CLEA WEISS OF COUNSEL), FOR DEFENDANT-APPELLANT.
BRIAN P. GREEN, DISTRICT ATTORNEY, ROCHESTER (MARTIN P. MCCARTHY, II, OF COUNSEL), FOR RESPONDENT.

Appeal from a judgment of the Monroe County Court (Vincent M. Dinolfo, J.), rendered August 16, 2019. The judgment, insofar as appealed from, modified on the law by reversing those parts convicting defendant of murder in the second degree under counts 3 and 4 of the indictment and dismissing those counts and by directing that the sentences imposed on counts 7 and 8 run concurrently with the sentences imposed on counts 1, 2, 5, and 6. The judgment was modified insofar as appealed from by order of this Court entered July 26, 2024 (229 AD3d 1180), and the Court of Appeals on February 19, 2026 modified the order of this Court and remitted the case to this Court for further proceedings (— NY3d — [2026]).
[*1]
Now, upon remittitur from the Court of Appeals,
It is hereby ORDERED that, upon remittitur from the Court of Appeals, the judgment so appealed from is affirmed.
Memorandum: This case is before us upon remittitur from the Court of Appeals (People v Shaw, — NY3d —, 2026 NY Slip Op 00961 [2026], modfg 229 AD3d 1180 [4th Dept 2024]). Defendant was convicted upon a jury verdict of two counts of murder in the first degree (Penal Law § 125.27 [1] [a] [viii]; [b]), two counts of murder in the second degree (§ 125.25 [1]), one count each of attempted murder in the second degree (§§ 110.00, 125.25 [1]) and assault in the first degree (§ 120.10 [1]), and three counts of criminal possession of a weapon (CPW) in the second degree (§ 265.03 [1] [b]; [3]). In our prior decision, we modified the judgment of conviction by reversing those parts convicting defendant of murder in the second degree under counts 3 and 4 of the indictment on the ground that they were lesser inclusory offenses of counts 1 and 2 and by directing that the sentences imposed on counts 7 and 8 run concurrently with the sentences imposed on counts 1, 2, 5, and 6 (Shaw, 229 AD3d at 1181).
One of the contentions advanced by defendant on appeal was that, in violation of Payton v New York (445 US 573 [1980]), the police unlawfully arrested him without a warrant after ordering him at gunpoint to exit the apartment of a female friend with whom he had spent the night. Defendant further contended that, as a result of his unlawful arrest, County Court should have suppressed a firearm found by the police inside the apartment after the tenant consented to a search of the premises. Although we agreed with defendant that his arrest was unlawful, we concluded that suppression of the gun was not required because the tenant voluntarily consented to the search of her apartment and thus the recovery of the gun was sufficiently attenuated from the taint of defendant's unlawful arrest (Shaw, 229 AD3d at 1184).
The dissenting justice concluded that the tenant's consent to search the apartment was not voluntary and that, even if it was, "it was not sufficiently attenuated from the [Payton] violation . . . to purge the taint of the illegality" (Shaw, 229 AD3d at 1186 [Ogden, J., dissenting]). Although the dissenting justice concluded that the court erred in refusing to suppress the gun, she concluded that the error was harmless except with respect to count 9 of the indictment, which related to defendant's possession of a weapon on the date of his arrest (id. at 1187 [Ogden, J., dissenting]). The dissenting Justice granted defendant's application for leave to appeal.
The Court of Appeals determined that the majority applied "the wrong factors in assessing the voluntariness of the tenant's consent" (Shaw, — NY3d at —, 2026 NY Slip Op 00961, *5) and remitted the matter for us "to consider whether the gun should be suppressed, under the correct legal standard for determining the validity of the tenant's consent, with respect to count nine only" (id. at —, 2026 NY Slip Op 00961, *7). The Court advised that People v Gonzalez (39 NY2d 122, 128-130 [1976]) sets forth the correct standard for determining the voluntariness of the tenant's consent (see Shaw, — NY3d at —, 2026 NY Slip Op 00961, *6). With respect to counts 1, 2, and 5 through 8, however, the Court of Appeals affirmed the judgment on the alternative ground that any error in the court's suppression ruling would be harmless (id. at —, 2026 NY Slip Op 00961, *7). We note that, inasmuch as the sentence imposed on count 9 is concurrent to the life sentences imposed on the murder counts, resolution of the suppression issue one way or the other will have no practical effect on defendant.
Under Gonzalez, in determining whether the tenant's consent to search was voluntary, we must consider whether that consent was a "true act of the will, an unequivocal product of an essentially free and unconstrained choice" as opposed to the product of "official coercion, actual or implicit, overt or subtle" or only "a yielding to overbearing official pressure" (Gonzalez, 39 NY2d at 128). Factors that should be considered in determining whether consent was voluntary include whether the consenter was "in custody or under arrest," whether the consenter was handcuffed when consent was given, and whether "the immediate events of an arrest, especially a resisted arrest . . . engender[ed] an atmosphere of authority ordinarily contradictory of a capacity to exercise a free and unconstrained will" (id. at 128-129; see also Shaw, — NY3d at —, 2026 NY Slip Op 00961, *6). "Submission to authority is not consent" (Gonzalez, 39 NY2d at 129).
Here, upon remittal, we have considered the above factors and again conclude that suppression is not warranted inasmuch as the tenant's consent was voluntarily given and sufficiently attenuated from the taint arising from defendant's unlawful arrest outside the apartment. The evidence at the suppression hearing established that, after the tenant emerged from her apartment with her hands up, the police directed her to the ground at gunpoint and placed her in handcuffs. After the tenant sat alone in the back seat of a patrol car for five to seven minutes, an investigator explained to her why the police were at her apartment. The investigator said that he knew that defendant brought into her apartment a gun that had been used in a double homicide and that the police were interested only in obtaining the gun. After being informed of the names of the homicide victims, the tenant began crying and hugged the investigator. She evidently knew the victims and wanted to assist the police in retrieving the gun, which was inside the apartment where she resided with her children. The tenant then signed a consent form allowing the police to search her apartment. According to the investigator, the tenant "jumped at the opportunity" to consent. By that point of the encounter, the tenant had been informed that she was not a suspect and her handcuffs had been removed. Moreover, at no time did the tenant resist any of the officer's commands.
Although defendant contends that the tenant's consent was involuntary because it was given shortly after she had been removed from her apartment under highly coercive circumstances, the tenant testified at the suppression hearing that, when she signed the consent form, she was not "intimidated or anything like that" and that her consent was voluntary. The tenant provided similar testimony at trial. As we noted in our prior decision, "[t]he tenant never claimed, in or out of court, that her consent to search was anything but voluntary, and we reject defendant's contention that the tenant's testimony at the hearing is unworthy of belief" (Shaw, 229 AD3d at 1185). Under the circumstances, to conclude that the tenant did not voluntarily consent to the search would require us to find that she was lying under oath or mistaken as to her [*2]own mindset. We perceive no basis in the record for making such a finding, and we therefore adhere to our determination of voluntariness.
The Court of Appeals did not explicitly remit the matter for us to determine whether the tenant's consent, if voluntary, was sufficiently attenuated from defendant's illegal arrest. Nevertheless, addressing the issue out of an abundance of caution, we conclude that the tenant's consent to search was "acquired by means sufficiently distinguishable from the illegal arrest to be purged of the illegality" (People v Borges, 69 NY2d 1031, 1033 [1987]).
Although not dispositive, "the voluntariness of the consent is an important factor in the court's determination of attenuation" (id.). Other factors to consider include "the temporal proximity of the consent to the arrest, the presence or absence of intervening circumstances, whether the police purpose underlying the illegality was to obtain the consent or the fruits of the search, whether the consent was volunteered or requested, whether the defendant was aware he could decline to consent, and particularly, the purpose and flagrancy of the official misconduct" (id.; see Matter of Leroy M., 16 NY3d 243, 246 [2011], cert denied 565 US 842 [2011]). That list of factors is not exhaustive (see Borges, 69 NY2d at 1033).
Here, as noted, the tenant voluntarily consented to the search, so that important attenuation factor favors the People. Also favoring the People is the fact that there is no reason to believe that the police constructively arrested defendant inside the tenant's apartment for the purpose of obtaining the tenant's "consent or the fruits of the search" (id.). While the police may have eschewed obtaining an arrest warrant in order to avoid attachment of defendant's right to counsel, the firearm that defendant sought to suppress was not a product of the warrantless arrest. Instead, it was the product of the warrantless search, which was lawfully conducted based on the tenant's voluntary consent. Stated otherwise, the Payton violation did not put the police " 'in a better position than [they] would have been in if no illegality had transpired' " (People v Jones, 2 NY3d 235, 242 [2004], quoting Nix v Williams, 467 US 431, 443 [1984]).
We cannot agree with defendant that the failure of the police to obtain an arrest warrant constitutes flagrant official misconduct. Where probable cause exists to believe that a suspect has committed a crime, the police are not required to obtain an arrest warrant (see People v Siler, 197 AD2d 842, 843 [4th Dept 1993], lv denied 82 NY2d 903 [1993]; see also People v Anderson, 290 AD2d 658, 658-659 [3d Dept 2002], lv denied 97 NY2d 750 [2002]), and "a deliberate failure by the police to secure an arrest warrant before speaking with a defendant in order to avoid triggering his right to counsel is insufficient to warrant suppression" (Anderson, 290 AD2d at 659; see People v Caviano, 194 AD2d 429, 431 [1st Dept 1993], lv denied 82 NY2d 892 [1993], reconsideration denied 83 NY2d 803 [1994]; see generally People v Robles, 72 NY2d 689, 695-699 [1988]). If failing to obtain an arrest warrant does not, standing alone, warrant suppression, it should not be deemed flagrant official misconduct for attenuation purposes.
We further determine that there were intervening circumstances between the arrest and consent to search. During the five-to-seven-minute interval between defendant's arrest and the tenant's consent, the police explained to the tenant that she was not the target of their investigation and that defendant may have brought a loaded firearm into the apartment, where her children resided. The tenant had no knowledge of that information until after she was ordered out of the apartment. While other attenuation factors favor defendant, such as the fact that the police did not inform the tenant that she could refuse consent, we conclude that the balance of factors supports a finding that the tenant's consent was not tainted by the unlawful arrest of defendant.
All concur except Ogden, J., who dissents and votes to modify in accordance with the following memorandum: I respectfully dissent. I stand by my original conclusions that the tenant's consent to search the apartment was not voluntary and that, even assuming, arguendo, that the tenant's consent was voluntary, it was not sufficiently attenuated from the Payton violation (People v Shaw, 229 AD3d 1180, 1186 [4th Dept 2024] [Ogden, J., dissenting], mod —[*3]NY3d —, 2026 NY Slip Op 00961 [2026]). I would therefore modify the judgment by granting the omnibus motion insofar as it sought to suppress the gun, reversing that part convicting defendant of criminal possession of a weapon in the second degree under count 9 of the indictment, and dismissing that count of the indictment.
I respectfully disagree with the majority's conclusion that "there is no reason to believe that the police constructively arrested defendant inside the tenant's apartment for the purpose of obtaining the tenant's 'consent or the fruits of the search.' " In my view, the body camera footage admitted in evidence at the hearing reveals both that law enforcement believed defendant brought a gun into that apartment and that they actively sought to obtain that gun. As I previously explained, "the reason the police did not seek an arrest warrant in advance was because they did not want defendant's right to counsel to attach" (Shaw, 229 AD3d at 1187 [Ogden, J., dissenting]). Certainly, in conducting an arrest in this manner—with 15 members of Monroe County's SWAT team and additional uniformed officers arriving at the apartment and ordering defendant to come out empty handed and
with his hands up—the police were seeking all the fruits that would flow from the unlawful encounter.
Entered: June 26, 2026
Ann Dillon Flynn
Clerk of the Court